[L.A. No. 30104. In Bank. Aug. 28, 1973.]

ARTHUR WENDELL PARSLEY et al., Petitioners, v.
THE SUPERIOR COURT OF RIVERSIDE COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## COUNSEL

Herbert M. Porter for Petitioners.

No appearance for Respondent.

Byron C. Morton, District Attorney, Howard M. Dabney, Assistant District Attorney, Ronald S. Smith and Ronald Lorden, Deputy District Attorneys, for Real Party in Interest.

Joseph P. Busch, District Attorney (Los Angeles), Harry Wood, Harry B. Sondheim and Daniel L. Bershin, Deputy District Attorneys, as Amici Curiae on behalf of Real Party in Interest.

## OPINION

**MOSK, J.**—Defendants, charged with violation of three sections of the Health and Safety Code, moved unsuccessfully to set aside the information pursuant to Penal Code section 995,[1] and failed to obtain a writ of prohibition in the Court of Appeal. We granted defendants' petition for hearing in order to decide whether a magistrate who issues a search warrant may relieve police officers of the statutory duty to give notice of their authority and purpose before entering a house to serve a warrant.

On March 17, 1972, officers of the Riverside Police Department executed a search warrant for a particular dwelling house. The warrant issued by the magistrate specifically provided that the officers "need not comply with Penal Code Section 1531." Upon arrival at the location, one

---

[1]Defendants were charged in three separate counts with violating Health and Safety Code sections 11500.5, 11910 and 11555.

of the officers crawled through a bedroom window which had no glass or screen but over which a cloth had been tied down to exclude both light and the elements.[2] The officer, before entering, gave no notice of his authority or purpose.[3] The subsequent search of the dwelling yielded various articles which appeared to the officers to be narcotics and which defendants now concede to be contraband. Defendants, who were occupants of the building, were both arrested.

██ Penal Code section 1531 provides: "The officer may break open any outer or inner door or window of a house, or any part of a house or anything therein, to execute the warrant, if, after notice of his authority and purpose, he is refused admittance." An equivalent provision, Penal Code section 844, governs entry without a warrant to effect an arrest. (See *People* v. *Gastelo* (1967) 67 Cal.2d 586, 588 [63 Cal.Rptr. 10, 432 P.2d 706].) The negative inference flowing from these provisions serves to bar most unannounced entries and to render inadmissible evidence seized pursuant thereto. (*Greven* v. *Superior Court* (1969) 71 Cal.2d 287, 295 [78 Cal.Rptr. 504, 455 P.2d 432]; *People* v. *Maddox* (1956) 46 Cal.2d 301, 305-307 [294 P.2d 6].) We have held, however, that failure to comply with sections 1531 and 844 does not compel application of the exclusionary rule "if the specific facts known to the officer before his entry are sufficient to support his good faith belief that compliance will increase his peril, frustrate the arrest, or permit the destruction of evidence." (*People* v. *Tribble* (1971) 4 Cal.3d 826, 833 [94 Cal.Rptr. 613, 484 P.2d 589]; *People* v. *Gastelo* (1967) *supra,* 67 Cal.2d 586, 587-588; *People* v. *Maddox* (1956) *supra,* 46 Cal.2d 301, 306.)

We hold the superior court erred in concluding advance judicial approval may excuse compliance with statutory announcement requirements.

Sections 1531 and 844 are striking in that the Legislature failed to include in either statute any exceptions to the rule that an officer must provide notice of his authority and purpose and seek consent to admittance before resorting to forcible entry. ██ We have construed the statutes to contain implicit exceptions for articulated exigent circumstances on the ground that "since the demand and explanation requirements . . . are a codification of the common law, they may reasonably be interpreted as

---

[2]Entry through such an aperture constitutes a breaking within the meaning of section 1531. (*People* v. *Rosales* (1968) 68 Cal.2d 299, 303 [66 Cal.Rptr. 1, 437 P.2d 489].)

[3]Once inside the dwelling, the officer informed defendant Parsley, "We're police officers." This statement does not satisfy section 1531 because (1) it was made inside the house, and (2) it did not include a statement of purpose.

limited by the common law rules . . . ." (*People* v. *Maddox* (1956) *supra,* 46 Cal.2d 301, 306.)

These common law exceptions pertain only to emergency situations existing *at the time of entry.* There appears to be no common law doctrine empowering courts to authorize in advance noncompliance with announcement requirements. Thus, the ground which supports excusal of compliance after the fact of entry cannot be extended to validate prior judicial authorization. This consideration appears to underlie our provision in *Maddox* that the existence of exigent circumstances must be determined "[w]ithout the benefit of hindsight and ordinarily on the spur of the moment, [and] *the officer must decide these questions in the first instance.*" (Italics added.) (46 Cal.2d at p. 306.)

Further, evidence that the Legislature intended to preclude warrants authorizing in advance noncompliance with announcement requirements appears from a comparison of section 1531 with section 1533, which concerns nighttime entry. Section 1533 provides: "Upon a showing of good cause, the magistrate may, in his discretion, insert a direction in a search warrant that it may be served at any time of the day or night. In the absence of such a direction, the warrant shall be served only between the hours of 7 o'clock a.m. and 10 o'clock p.m." The fact that this section expressly provides for prior judicial authorization while section 1531 fails to do so clearly implies, under the doctrine of *inclusio unius est exclusio alterius,* that the Legislature intended not to permit warrants to excuse unannounced entry.

Inasmuch as the Legislature has provided no authority for inserting directions in warrants excusing compliance with statutory announcement requirements and has in fact impliedly barred such a procedure, the courts are without power to institute a practice of issuing such warrants unless prior judicial authorization of noncompliance is constitutionally mandated. We conclude that it is not.

While the requirements of announcement before entry have been held to be compelled by the guarantees against search and seizure contained in the Fourth Amendment (*Ker* v. *California* (1963) 374 U.S. 23 [10 L.Ed. 2d 726, 83 S.Ct. 1623]; *People* v. *Gastelo* (1967) *supra,* 67 Cal.2d 586, 588-589), police officers have no constitutional duty to obtain prior judicial authorization to enter without notice. The proposition that searches without a warrant are unreasonable per se except in a few narrowly defined circumstances does not apply to the issue of unannounced entry. The reason for this distinction is that information providing probable cause for the issuance of a search warrant is of a different nature and source than infor-

mation justifying unannounced entry. While a search warrant must necessarily rest upon previously obtained information, unannounced entry is excused only on the basis of exigent circumstances existing at the time an officer approaches a site to make an arrest or execute a warrant. Facts existing at the time of obtaining a warrant may no longer exist at the time of entry. Such an emergency, therefore, can be judged only in light of circumstances of which the officer is aware at the latter moment. Previously obtained information may at that time be taken into account in determining the necessity of dispensing with ordinary announcements (*People* v. *Dumas* (1973) *ante*, pp. 871, 877-879 [109 Cal.Rptr. 304, 512 P.2d 1208]), but a more significant factor in this decision is perception and knowledge the officer acquires on the scene immediately prior to effecting entry. For this reason, earlier judicial authorization would be largely inappropriate in the context of unannounced entry and, thus, clearly cannot be considered a constitutional requirement.

Statistical data submitted to us indicate the increased use of warrants providing advance excusal of compliance with statutory announcement requirements. For the year April 1, 1972, to March 31, 1973, 12 percent of all search warrants issued in Los Angeles County contained such a provision, a figure that suggests requests are not limited to true prospective emergency circumstances. Were we to approve this practice, there would be an understandable temptation for agencies to use pre-prepared request forms and to seek exemption in most cases. This would, for all practical purposes, eliminate sections 1531 and 844 from the statute books and judicially legislate in their place a de facto no-knock rule.

■ We conclude, for all the foregoing reasons, that the magistrate was without power to give prior authorization for violation of section 1531 and that the People may not rely on such advance excusal to justify the officers' failure to comply with that section in the present case. As discussed above, the key to permissible unannounced entry is the knowledge of exigent circumstances possessed by police officers at the time of entry. Thus, from the viewpoint of a court reviewing justification for an unannounced entry after the fact, a warrant authorizing such action adds nothing.

At defendants' preliminary hearing the judge upheld the unannounced entry into their residence solely on the basis of the purported authority to effect such entry contained in the warrant. This was error. The People contend, however, the error was harmless in that sufficient evidence was introduced at the preliminary hearing to demonstrate that the police officers who effected the unannounced entry were in fact acting in response to what they perceived to be a demonstrable emergency.

The People introduced evidence at the preliminary hearing, including the averments contained in the warrant affidavit, that police officers had, through a confidential informant, made controlled purchases of narcotics from an individual inside defendants' residence. The informant assertedly told the officers he had seen a shotgun in the possession of this individual and that the individual was "known to" answer the door while armed with this weapon. According to the warrant affidavit, similar information had reached the police officers from "numerous other persons acquainted with the suspect."

■ While knowledge that a person in a house to be entered is "known to" answer the door armed with a firearm might be sufficient, under some circumstances, to excuse police officers from announcement requirements (cf. *People* v. *Dumas, supra, ante,* pp. 871, 878-879), we hold that the evidence suggesting the officers in this case possessed such knowledge was incompetent and thus inadmissible at the preliminary hearing.

At that hearing defendants' counsel objected to introduction of evidence of information received from the confidential informant and repeatedly moved for disclosure of the informant's identity. The objection was overruled and the motions denied. The facts of this case are similar to *Priestly* v. *Superior Court* (1958) 50 Cal.2d 812 [330 P.2d 39]. In that case the prosecution at the preliminary hearing sought to show reasonable cause for a warrantless search by testimony as to communications from a confidential informant. The defendant sought unsuccessfully to exclude that testimony or to compel disclosure of the informant's identity. We held that the information must be set aside, stating: "If testimony of communications from a confidential informer is necessary to establish the legality of a search, the defendant must be given a fair opportunity to rebut that testimony. He must therefore be permitted to ascertain the identity of the informer, since the legality of the officer's actions depends upon the credibility of the information, not upon facts that he directly witnessed and upon which he could be cross-examined." (50 Cal.2d at p. 818.) The testimony as to evidence received from the confidential informant was, therefore, held incompetent to support the validity of the search.

The rule in *Priestly* was modified by the enactment of Evidence Code section 1042, subdivision (c), which provides: "[I]n any preliminary hearing, criminal trial, or other criminal proceeding, any otherwise admissible evidence of information communicated to a peace officer by a confidential informant, who is not a material witness to the guilt or innocence of the accused of the offense charged, is admissible on the issue of reasonable cause to make an arrest or search without requiring that the name or identity of the informant be disclosed if the judge or magistrate is satisfied,

based upon evidence produced in open court, out of the presence of the jury, that such information was received from a reliable informant and in his discretion does not require such disclosure."

This section appears to include issues of reasonableness of unannounced entry within the language "reasonable cause to make an arrest or search." Under this section, in order to admit at a preliminary hearing evidence relevant to the reasonableness of an arrest or search that is based on communications of a confidential informant, the judge or magistrate must either (1) compel disclosure of the informant's identity as required by *Priestly,* or (2) exercise his discretion based on evidence produced in open court that the informant is reliable and that disclosure is not required.

The judge at the preliminary hearing in the present case followed neither course. In ruling that the unannounced entry was justified by the warrant provision alone, he avoided the requirement of disclosing the informant's identity (Evid. Code, § 1042, subd. (b)), but did so without exercising his discretion as to the informant's reliability based on evidence produced in open court. The judge, moreover, restricted cross-examination of the testifying police officers by defendants' counsel concerning the reliability of the informant's communications on the ground that the warrant was sufficient on its face to authorize the unannounced entry. One of the officers, for example, was prevented by the judge from answering the preliminary question, "Just what did [the informant] say?"

■ Full cross-examination of prosecution witnesses concerning informant reliability is not only necessary for a proper exercise of the court's discretion on this issue under section 1042, subdivision (c), it appears to be a constitutional prerequisite to invoking the informant privilege. In *McCray* v. *Illinois* (1967) 386 U.S. 300 [18 L.Ed.2d 62, 87 S.Ct. 1056], the United States Supreme Court held that the Constitution does not require abolition of the informant privilege where the communication from the informant has been used merely to establish cause for an arrest or search. In upholding the privilege, however, the court emphasized the procedures that had been followed to determine the informant's reliability: "The arresting officers in this case testified, in open court, fully and in precise detail as to what the informer told them and as to why they had reason to believe his information was trustworthy. Each officer was under oath. Each was subjected to searching cross-examination. The judge was obviously satisfied that each was telling the truth, and for that reason he exercised the discretion conferred upon him by the established law of Illinois to respect the informer's privilege." (*Id.* at p. 313 [18 L.Ed.2d at p. 72].)

In contrast to that procedure, the judge's failure to allow cross-examina-

tion and to exercise his statutory discretion at the preliminary hearing in the instant case renders incompetent the evidence concerning communications from the confidential informant. That evidence provides the only possible excuse for the unannounced entry into defendants' residence. Consequently, the inculpatory evidence discovered in the subsequent search, which was the sole basis for the filing of the information, is likewise incompetent. Inasmuch as defendants were thus committed where there was no competent evidence to show they were guilty of a public offense, the information must be set aside under Penal Code section 995. (*Priestly* v. *Superior Court* (1958) *supra*, 50 Cal.2d 812, 815.)

Let the peremptory writ of prohibition issue as prayed.

Wright, C. J., Tobriner, J., and Sullivan, J., concurred.

**CLARK, J.**—I dissent. Since this court has held compliance with the announcement requirements of section 1531 of the Penal Code may be excused by emergency circumstances of which an officer became aware before arriving at the scene of entry (*People* v. *Dumas* (1973) *ante*, pp. 871, 878 [109 Cal.Rptr. 304, 512 P.2d 1208]) and since constitutional policy holds the informed and deliberate determination of a magistrate is preferred over the hurried action of an officer (*United States* v. *Lefkowitz* (1932) 285 U.S. 452, 464 [76 L.Ed.2d 877, 882, 52 S.Ct. 420]), then should not the magistrate issuing the search warrant have authority to simultaneously excuse the officer who will execute that warrant from complying with section 1531, the same emergency circumstances having been shown?

The magistrate is empowered to excuse compliance with the announcement requirement of section 1531.[1]

Section 1531 authorizes forcible entry to execute a search warrant if the officer is refused admittance after having given notice of his authority and purpose. Forcible entry to effect an arrest is permitted under similar circumstances by section 844.[2] Compliance with sections 1531 and 844 is excused if the specific facts known to the officer before his entry are sufficient to support his good faith belief that compliance will increase his peril, frustrate the arrest, or permit the destruction of evidence. (*People* v.

---

[1] Unless otherwise indicated, all statutory references are to sections of the Penal Code.

[2] "To make an arrest, a private person, if the offense be a felony, and in all cases a peace officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired." (Pen. Code, § 844.)

*Tribble* (1971) 4 Cal.3d 826, 833 [94 Cal.Rptr. 613, 484 P.2d 589]; *People* v. *Gastelo* (1967) 67 Cal.2d 586, 587-588 [63 Cal.Rptr. 10, 432 P.2d 706].)

In the circumstances of a particular case an officer may not learn of the emergency circumstances excusing compliance with section 1531 until he is at the scene and about to effect entry. In *People* v. *Maddox* (1956) 46 Cal.2d 301, 306 [294 P.2d 6], for example, it was only after the officer knocked on defendant's door that he heard the sound of retreating footsteps and a voice say, "Wait a minute." We have expressly held, however, that noncompliance with section 1531 may also be justified by emergency circumstances of which the officers were aware *before* arriving at the scene of entry. (*People* v. *Dumas, supra, ante,* pp. 871, 878.) Not infrequently the officer learns of the emergency circumstances long before he effects entry. (See, e.g., *People* v. *Gonzales* (1971) 14 Cal.App.3d 881, 884-885 [92 Cal.Rptr. 660] (four days prior to entry officer was told by informant defendant would destroy evidence if he saw police).) In such cases there is opportunity to seek judicial approval for noncompliance with section 1531.

The majority counters: "Facts existing at the time of obtaining a warrant may no longer exist at the time of entry." (Majority opn., *ante,* p. 940.) That may be true, but it is equally true of the facts justifying issuance of the warrant itself as it is of the facts justifying excusal of the announcement requirement. The warrant procedure usually involves the prediction that the items to be seized—on the premises when the warrant is applied for— will still be on the premises when the warrant is executed as long as 10 days later,[3] although a warrant may also involve the prediction that items not yet on the premises to be searched will have arrived there by the time the warrant is served.[4]

Indeed, petitioner's habit of answering the door carrying a loaded 12-gauge shotgun was a fact likely to persist longer than the presence of any particular quantity of contraband on his premises. In *People* v. *Dumas, supra,* the same habit, answering the door armed, was not considered by

---

[3]"(a) A search warrant shall be executed and returned to the issuing magistrate within ten days after date of issuance. A warrant executed within the ten-day period shall be deemed to have been timely executed and no further showing of timeliness need be made. After the expiration of ten days, the warrant, unless executed, is void . . . ." (Pen. Code, § 1534.)

[4]See *Alvidres* v. *Superior Court* (1970) 12 Cal.App.3d 575, 581 [90 Cal.Rptr. 682] (officers were allowed a warrant where it was clearly demonstrated the right to search would exist within a reasonable time in the future); *People* v. *Sanchez* (1972) 24 Cal.App.3d 664, 679 [101 Cal.Rptr. 193].

us to be so ephemeral as to render noncompliance with section 1531 unjustified. In *People* v. *Kahre* (1970) 6 Cal.App.3d 680 [86 Cal.Rptr. 291], for example, the officer executing a search warrant knew that on at least two prior occasions when defendant was arrested he wiped off formica table tops to obliterate records of his bookmaking activities. Therefore the officer entered defendant's apartment without complying with section 1531, catching defendant in the act of wiping writings off the kitchen table. There is no reason why a magistrate could not have drawn the same sensible conclusion the police officer did and, given the constitutional policy in favor of the warrant procedure (*United States* v. *Lefkowitz, supra*), we should encourage the officer to defer to the magistrate rather than precluding him from doing so.

The majority notes section 1533 provides for prior judicial authorization of nighttime service of search warrants but requires the warrant be executed between 7 a.m. and 10 p.m. in the absence of such authorization. From this they conclude the failure of the Legislature to provide for prior judicial approval of noncompliance with the requirements of section 1531 "clearly implies, under the doctrine of *inclusio unius est exclusio alterius,* that the Legislature intended not to permit warrants to excuse unannounced entry." (Majority opn., *ante,* p. 939.) The maxim is not applicable. The emergency circumstances exception to the requirements of sections 1531 and 844 is not a creation of the Legislature; it was created by the courts by reference to common law principles.[5] Therefore, no significance can be attached to the Legislature's silence on the propriety of prior judicial approval of proposed noncompliance. Moreover, the maxim *inclusio unius est exclusio alterius,* like other such maxims, performs its function as an aid to statutory construction only if it is not permitted to deflect attention from the fundamental concern: the ascertainment and furtherance of legislative intent. (See *Irwin* v. *City of Manhattan Beach* (1966) 65 Cal.2d 13, 21 [51 Cal.Rptr. 881, 415 P.2d 769].) Since prior juicial consideration of proposed noncompliance with the requirements of section 1531 would clearly further the purposes of the legislation,[6] the maxim should be disregarded insofar as it dictates a contrary result.

---

[5]"[S]ince the demand and explanation requirements of section 844 are a codification of the common law, they may reasonably be interpreted as limited by the common law rules that compliance is not required if the officer's peril would have been increased or the arrest frustrated had he demanded entrance and stated his purpose." (*People* v. *Maddox* (1956) 46 Cal.2d 301, 306 [294 P.2d 6]; see *People* v. *Gastelo* (1967) 67 Cal.2d 586, 587-588 [63 Cal.Rptr. 10, 432 P.2d 706].)

[6]The policies underlying section 1531 are the same as the policies served by section 844. (*Greven* v. *Superior Court* (1969) 71 Cal.2d 287, 292, fn. 6 [78 Cal.Rptr. 504,

Observing that 12 percent of the search warrants issued in Los Angeles County in the year ending 31 March 1973 excused compliance with section 1531, the majority finds in the statistic proof that "requests for excusal were not limited to true prospective emergency circumstances." (Majority opn., *ante,* p. 940.) However, a defendant who believes compliance with section 1531 should not have been excused may raise the issue on his motion to suppress the evidence seized, as petitioner did here. If the defendant believes that material statements contained in the affidavit supporting noncompliance were intentionally falsified by the affiant or that the statements were false and the affiant was unreasonable in believing their truth, he may challenge the factual veracity of the affidavit. (*Theodor* v. *Superior Court* (1972) 8 Cal.3d 77 [104 Cal.Rptr. 226, 501 P.2d 234].) The fact that not one instance of suppression of evidence on such grounds was reported to the appellate division of the Los Angeles County District Attorney's office during the period in question, as it would have been in the ordinary course of business, reveals that requests for excusal were limited to truly prospective emergency situations.

It is significant to note in this regard that a number of other jurisdictions have authorized the use of warrants to excuse officers from notice requirements. Such warrants are permitted under federal law by the Comprehensive Drug Abuse Prevention and Control Act of 1970 (21 U.S.C. § 879) and the District of Columbia Court Reform and Criminal Procedure Act of 1970 (D.C. Code Ann., § 23-591). Nebraska, New York and North Dakota have enacted similar statutes,[7] and the New York statute has been held constitutionally valid by the New York Court of Appeals. (*People* v. *De Lago* (1965) 16 N.Y.2d 289 [266 N.Y.S.2d 353, 213 N.E.2d 659] cert. den. (1966) 383 U.S. 963 [16 L.Ed.2d 305, 86 S.Ct. 1235].) The Minnesota Supreme Court has likewise held that constitutional announcement requirements may be excused under proper circumstances by prior judicial warrant. (*State* v. *Parker* (1969) 283 Minn. 127 [166 N.W.2d 347]; *State* v. *Linder* (1971) 291 Minn. 217, 218-219 [190 N.W.2d 91, 93].) The Supreme Court of Colorado has apparently moved the furthest in this direction by holding that the question of waiver of announcement re-

---

455 P.2d 432].) "The purposes and policies underlying section 844 are four-fold: (1) the protection of the privacy of the individual in his home [citations]; (2) the protection of innocent persons who may also be present on the premises where an arrest is made [citation]; (3) the prevention of situations which are conducive to violent confrontations between the occupant and individuals who enter his home without proper notice [citations] and (4) the protection of police who might be injured by a startled and fearful householder." (*Duke* v. *Superior Court* (1969) 1 Cal.3d 314, 321 [82 Cal.Rptr. 348, 461 P.2d 628]; see *People* v. *King* (1971) 5 Cal. 3d 458, 464, fn. 3 [96 Cal.Rptr. 464, 487 P.2d 1032].)

[7]Neb. Rev. Stat. § 29-411 (1972); N.Y. Code Crim. Proc., § 690-35, subd. 3(b) (McKinney 1971); N.D. Cent. Code, § 29-29-08.

quirements *must* be submitted to the magistrate unless the facts justifying a forced entry become known to the police subsequent to obtaining the warrant. (*People* v. *Lujan* (1971) 174 Colo. 554, 559 [484 P.2d 1238, 1241].)

The affidavit in this case was sufficient to excuse compliance with section 1531. In order to decide whether this affidavit was legally sufficient to excuse compliance with section 1531 it is first necessary to determine whether an affidavit in support of noncompliance must meet the same standards of legal sufficiency required of an affidavit in support of a search warrant. If the same standards of legal sufficiency do apply, the arguable issue in this case is whether the affidavit in support of noncompliance established that the hearsay informant spoke with personal knowledge when he informed the affiant that defendant answered the door with a loaded shotgun. Although I believe this affidavit in support of noncompliance did, in fact, establish that the hearsay informant spoke with such personal knowledge, I do not believe the affidavit need satisfy that standard to be legally sufficient. There were enough other indicia of reliability to justify noncompliance with section 1531.

To be legally sufficient to support the issuance of a search warrant an affidavit based on an informant's hearsay statement must meet two requirements: (1) The affidavit must allege the informant's statement in language which is factual rather than conclusionary and must establish that the informant spoke with personal knowledge of the matters contained in the statement; and (2) the affidavit must contain some underlying factual information from which the magistrate can reasonably conclude the informant was credible or his information reliable. (*People* v. *Superior Court* (1972) 6 Cal.3d 704, 711 [100 Cal.Rptr. 319, 493 P.2d 1183]; see *Spinelli* v. *United States* (1969) 393 U.S. 410, 413 [21 L.Ed.2d 637, 641-642, 89 S.Ct. 584]; *Aguilar* v. *Texas* (1964) 378 U.S. 108, 114 [12 L.Ed.2d 723, 728-729, 84 S.Ct. 1509].)

However, these requirements must be tempered by reason; i.e., affidavits in support of search warrants are to be interpreted through common sense, so police officers will not be discouraged from submitting their evidence to a judicial officer before acting. (*United States* v. *Ventresca* (1965) 380 U.S. 102, 108 [13 L.Ed.2d 684, 688-689, 85 S.Ct. 741]; *People* v. *Superior Court, supra,* 6 Cal.3d at p. 711.) Although the affidavit in support of noncompliance here did not expressly state the hearsay informant had personal knowledge of defendant's custom of opening the door with a loaded shotgun, the fact the informant made the assertion after having encountered defendant at his residence on at least two occasions leads to

the common-sense inference the informant personally observed defendant answer the door while armed on those occasions. Indeed, at the preliminary hearing the informant's personal knowledge was established.

Even if the information was not based on the informant's personal knowledge, it carried sufficient "indicia of reliability" to excuse compliance with section 1531. Information not based on the informant's personal knowledge, and therefore insufficient to justify search or arrest, may nevertheless be sufficient to justify both a temporary detention for investigation and a protective frisk if the information carries enough indicia of reliability. (*Adams* v. *Williams* (1972) 407 U.S. 143, 147 [32 L.Ed.2d 612, 617-618, 92 S.Ct. 1921].)[8] Where the emergency circumstance is peril to the officer executing the search warrant, unannounced entry serves the same purpose as a protective frisk, and the showing of necessity for the former should not be tested by stricter standards than are applied to the latter. Since the affidavit in support of the search warrant has been tested by the stricter standards of legal sufficiency pertaining thereto, an individual subjected to an unannounced entry actually receives greater constitutional protection than one subjected to a frisk, although the threat to the officer's safety is the same.

Under the supervision of affiant and an undercover police officer the informant purchased heroin at defendant's residence on two occasions within 10 days prior to application for the search warrant. The informant's statement concerning defendant's habit of answering the door armed with a shotgun was corroborated by information given the affiant by numerous

---

[8]In *Adams* v. *Williams* a person known to a police officer informed him that a man seated in a nearby car was carrying narcotics and had a gun at his waist. When the suspect rolled down the car window, instead of opening the door as the officer requested, the officer reached into the car, removed a loaded revolver from the suspect's waistband, and arrested him for unlawful possession of the revolver. The revolver had not been visible to the officer from outside the suspect's car. (*Id.* at pp. 144-145 [32 L.Ed.2d at p. 616].)

The "indicia of reliability" were: The informant was "known . . . personally" to the officer and "had provided him with information in the past"; the informant "came forward personally to give information that was immediately verifiable at the scene," making this "a stronger case than obtains in the case of an anonymous telephone tip"; and the informant might have been criminally liable for giving a false tip. (*Id.* at pp. 146-147 [32 L.Ed.2d at p. 617].) Although the informant had given the officer information in the past, the previous information had involved homosexual conduct in the local railroad station, not narcotics or guns. (*Id.* at p. 156 [32 L.Ed.2d at p. 622] (Marshall, J., dissenting).) Moreover, the previous information had not led to an arrest because the officer's investigation had failed to reveal evidence of the conduct in question. (*Id.* at pp. 156-157 [32 L.Ed.2d at pp. 622-623] (Marshall, J., dissenting).) Most importantly for our purposes, there was no indication the unnamed hearsay informant had personal knowledge of Williams's possession of narcotics or a revolver. (*Id.* at p. 157 [32 L.Ed.2d at p. 623] (Marshall, J., dissenting).)

other persons acquainted with defendant. The information supporting non-compliance with section 1531, therefore, carried ample indicia of reliability.

The petition for a writ of prohibition should be denied.

McComb, J., and Burke, J., concurred.

The petition of the real party in interest for a rehearing was denied October 10, 1973. McComb, J., Burke, J., and Clark, J., were of the opinion that the petition should be granted.