[Crim. No. 7394. Third Dist. Oct. 17, 1974.]

THE PEOPLE, Plaintiff and Respondent, v.
GAIL LYNN CONSTANCIO et al., Defendants and Appellants.

534

**COUNSEL**

Richard H. Will, under appointment by the Court of Appeal, for Defendants and Appellants.

Evelle J. Younger, Attorney General, and Susan Cohn, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**PUGLIA, J.**—Defendants Helen Vallesteros and Gail Constancio were jointly tried and convicted by jury of possession of heroin (Health & Saf. Code, § 11350). Additionally, the jury convicted defendant Constancio of possession of amphetamines (Health & Saf. Code, § 11350) and possession of paraphernalia for the use of a controlled substance (Health & Saf. Code, § 11364). Defendants contend that the search which produced evidence essential to their convictions was unlawful and that they did not receive effective assistance of counsel. Our review of the record and the applicable law convinces us that the defendants' contentions must fail and that the judgments must be affirmed.

In the afternoon of July 16, 1973, law enforcement officers went to the residence occupied by defendants for the purpose of searching the residence and the person of defendant Constancio. The officers had information from a confidential, reliable informant, based upon the informant's personal observations, that the defendants had sold heroin from the residence within three to four days before the 16th of July. The officers did not have a search warrant or warrant of arrest. They knew, however, that defendant Constancio was on probation and that as a condition of probation her person and property could, with reasonable cause, be searched by a peace officer without a search warrant. On arrival, Officer James Davis knocked on the door. Defendant Vallesteros came to a window, opened the curtain and asked the officer what he wanted.[1] The officer replied, "It's Jim, and I want to talk to Gail." Vallesteros then opened the front door, leaving the screen door closed. She again inquired of Davis what he wanted. Davis repeated his earlier response. He observed defendant Constancio standing behind Vallesteros in the living room about six feet beyond the doorway. Davis opened the screen door and, standing at the threshold without entering, displayed his identification and advised who he was and the purpose for which he was there. The officers then entered. In the residence they found heroin and paraphernalia including spoons, syringes and needles. They also found amphetamine tablets in defendant Constancio's purse and heroin on the person of defendant Vallesteros.

### I

Defendants make no claim that a search pursuant to the authority of a probation order is unreasonable per se. In any event, under the controlling authorities such a contention would necessarily be unavailing.

---

[1] There is no direct evidence whether or not the officers were in uniform. The reasonable inference suggested by the testimony is that they were not.

(*People* v. *Mason* (1971) 5 Cal.3d 759 [97 Cal.Rptr. 302, 488 P.2d 630]; *Russi* v. *Superior Court* (1973) 33 Cal.App.3d 160 [108 Cal.Rptr. 716]; *People* v. *Bremmer* (1973) 30 Cal.App.3d 1058 [106 Cal.Rptr. 797]; *People* v. *Kern* (1968) 264 Cal.App.2d 962 [71 Cal.Rptr. 105].) Rather, defendants contend a search under authority of a probation order is unreasonable unless the suspected conduct of the probationer, relied upon as justification therefor, is shown to be similar or related to the offense for which probation was imposed.

It is the burden of the defendant in a criminal case to raise the issue of illegally obtained evidence (*People* v. *Prewitt* (1959) 52 Cal.2d 330, 335 [341 P.2d 1]). When the defendant challenges the legality of a search and seizure, a showing that the search was made without a search warrant establishes a prima facie case and the burden of justification therefor then rests upon the People. (*People* v. *Villalva* (1973) 33 Cal.App.3d 362, 366 [109 Cal.Rptr. 16].) Prior to trial defendants noticed a motion to suppress evidence (Pen. Code, § 1538.5). The motion was dropped before hearing at defendants' request. There were no other pretrial proceedings to suppress evidence nor did defendants during trial raise the claim now asserted.[2]

The record does, incidentally, reveal that the instant search was not authorized by a search warrant. Notwithstanding that fact, for the reasons heretofore pointed out, the People's burden of justification arises only after defendant has first initiated a challenge to the legality of the search. Since there was no challenge on the grounds now asserted, the record, not surprisingly, does not disclose the offense for which defendant Constancio was placed on probation or the duration or other incidents of her probationary status except for the probation search condition.[3]

Defendants' first contention is thus answered by the rule that a judgment may not be reversed because of the alleged erroneous admission

[2]During cross-examination of Officer Stewart, a witness for the People, counsel for defendants was permitted over the People's objection to conduct additional cross-examination of the witness out of the presence of the jury for the stated purpose of challenging the existence of probable cause to conduct the search. The examination focused on the reliability of the confidential informant. At the conclusion thereof defendants' motion to exclude the evidence was denied.

[3]Neither the order of probation nor any other documentary evidence relative to Constancio's probationary status was offered or received in the trial court. The only reference in the record to Constancio's probationary status is in the testimony of Officer Davis as follows: "We were there under the authority that Gail Constancio, due to a——had waived a portion of her probation in regards to giving up the right to have a search warrant served on her and the conditions were that she signed, she could be searched, her residence, person or her vehicle with reasonable cause by qualified peace officers."

of evidence unless the record demonstrates that a motion to exclude or strike the evidence was timely made on the specific ground asserted on appeal. (*People* v. *Talley* (1967) 65 Cal.2d 830, 837-838 [56 Cal.Rptr. 492, 423 P.2d 564]; *People* v. *McDowell* (1972) 27 Cal.App.3d 864 [104 Cal. Rptr. 181]; *People* v. *Johnson* (1970) 5 Cal.App.3d 851, 863 [85 Cal.Rptr. 485].)

## II

We do not, however, dispose of defendants' first contention on the grounds so far discussed since defendants allege incompetence of trial counsel in failing to attack the search as an unreasonable exercise of the probation search condition.[4] Defendants rely exclusively on dicta in *People* v. *Bremmer, supra,* 30 Cal.App.3d 1058, for the proposition that a warrantless search of a probationer by a law enforcement officer, relying for authority upon a probation search condition, is justified only when the officer has information about the probationer's current activities reasonably suggesting that the probationer has resumed the very type of misconduct for which he was placed on probation. Defendants contend that trial counsel was derelict in not moving to suppress on the ground furnished by *Bremmer* and that such failure resulted in withdrawal of a crucial defense.

Any attempt to evaluate defendant's claim necessarily leads us into the realm of speculation since it is as reasonable to suppose that Constancio was on probation for a drug offense as for some other offense less closely related to her present misconduct. In the present state of the record then, we could dispose of this contention summarily, deferring consideration of the merits to a collateral proceeding in which the defendants presumably could develop the factual predicate underlying their claim. To do so, however, would only burden the courts with needless litigation since we are satisfied that the legality of a probation search is not determined by the relationship, or lack thereof, of the probation offense to the conduct relied upon to justify the search.

We think the dicta in *Bremmer* purporting to limit probation searches only to those situations where the probationer is suspected of a repetition of past misconduct is altogether too confining. There are nu-

---

[4]Defendants do not contend that the imposition of the probation search condition was not a reasonable exercise of the probation court's broad discretion to impose restrictive conditions to foster rehabilitation and to protect public safety. Such a challenge could not be maintained on the instant record which is totally silent as to the nature of the probation offense. Accordingly, we assume the condition was fitting and proper for the reformation and rehabilitation of the probationer in relation to the offense for which probation was granted. (Pen. Code, § 1203.1; *People* v. *Mason, supra,* 5 Cal.3d 759, 764-765; *People* v. *Kern, supra,* 264 Cal.App.2d 962, 964-965.)

merous other situations, frequently recurring, which reasonably require resort to the search authority of a probation order to monitor the probationer's compliance with the law.

Typically the search condition is imposed as a condition of probation extended to offenders whose pattern of criminal activity includes crimes characterized by possession of contraband such as illegal drugs or identifiable stolen property. The search condition is thus commonly employed when probation is granted to persons convicted of violation of the drug laws or of an offense against property such as burglary, theft or receiving stolen property.

It requires no recitation of authority to observe that drug offenders frequently commit burglary and theft as a means of funding their illegal activities with drugs. When a drug probationer falls from grace his renewed criminal conduct may well involve possession of identifiable stolen property or the instrumentalities with which to commit offenses against property. Similarly when one on probation for an offense against property such as burglary, falls from grace, his relapse into criminal activity may very well involve trafficking in and possession of illegal drugs or drug paraphernalia.

The probation search condition may also be utilized with those probationers whose criminal conduct consists of obtaining money from others by larceny or fraud where the illegal conduct is motivated by a purpose to obtain funds with which to acquire illegal drugs. While money, the immediate fruit of such crimes, is fungible, the possession of identifiable contraband, i.e., illegal drugs, is a characteristic of the probationer's pattern of criminal conduct. Although typically on probation for theft, forgery or check offenses, a return to criminal activity by one of the latter class of probationers frequently involves possession of illegal drugs or drug paraphernalia as well as the instrumentalities with which to commit offenses similar to the original probation offense.

The foregoing is illustrative of several types of cases in which a probation search condition is sometimes imposed. The condition is obviously designed to minimize the risk to the public safety inherent in the conditional release of a convicted offender. That purpose is not served by an artificial limitation, the effect of which is to foreclose to law enforcement authorities the opportunity to implement the condition, notwithstanding a reasonable belief that the probationer is in possession of contraband and once again engaged in criminal activity, albeit activity not identical to that for which convicted and placed on probation. That such a limitation is not constitutionally compelled is demonstrated by *People* v. *Mason, supra,* 5 Cal.3d 759, where our Supreme Court upheld a probation search of a narcotics probationer

suspected of participating in a burglary. Moreover the logic of such a limitation is questionable in that it reduces the means to control a probationer's activity to the disparagement of the public interest in maintaining a viable system of probation as an effective alternative to incarceration.

■ Where trial counsel's inadequacies result in withdrawing a crucial defense from the case, he deprives the defendant of the assistance of counsel to which he is entitled. (*People* v. *Stephenson* (1974) 10 Cal.3d 652, 661 [111 Cal.Rptr. 556, 517 P.2d 820].)

■ As we have heretofore pointed out, similarity of misconduct, past and current, is not required in order to validate a search under authority of a probation order. Here the officers had information based on the recent personal observations of an informant of established reliability that defendants had engaged in sales of narcotics from their residence. Such information itself is sufficient to sustain a finding that an arrest, search and seizure were made with probable cause. (*People* v. *Prewitt, supra,* 52 Cal.2d 330, 337.) No arrests were made, however, until after narcotics had been discovered in the residence. ■ Nonetheless the search was not dependent for its validity on the contemporaneous existence of probable cause to arrest because, apart from the coincidental existence thereof, there was ample reasonable cause to initiate a search under the probation order of the defendant Constancio's person and of her property. Therefore, trial counsel's failure to challenge the search either for lack of prior justification or for lack of demonstrable relationship between the justification therefor and the probation offense did not operate to withdraw a crucial defense from the case. This was not a case of officers acting arbitrarily at their whim or caprice. The conduct of the officers was reasonable when tested by Fourth Amendment standards.[5]

Moreover, even were we to accept the limitation on probation searches urged by defendants, we could not credit the claim of inadequacy of counsel without speculating that Constancio was on probation for an offense other than a violation of the laws controlling illicit drugs. We can speculate at least as readily that trial counsel was familiar with the nature of the probation offense and, for that reason, concluded that a motion to suppress based on *Bremmer* would be unavailing. ■ The burden of sustaining a charge of inadequate or ineffective representation is upon the defendant. The proof of inadequacy or ineffectiveness must be a demonstrable reality and not a speculative matter. (*People* v. *Stephenson, supra,* 10 Cal.3d 652, 661.)

---

[5]Because the officers' conduct complied with Fourth Amendment standards of reasonableness, it is unnecessary to discuss defendants' contention that the trial court erred in holding that a lesser degree of probable cause is required to justify a probation search than is required to support a search warrant or to make an arrest.

## III

Defendants next contend that the manner of execution of the probation search order was unreasonable in that the officers opened the screen door and entered the defendants' residence before identifying themselves and stating their purpose. The officers did not enter the residence to serve a search warrant. Therefore Penal Code section 1531, applicable to service of a search warrant, is not in terms applicable to the instant situation and the defendants so concede.[6] Defendants argue, however, that the strictures contained in section 1531 should apply by analogy to a search for which justification is sought in a condition of an order of probation.[7]

The requirement of announcement of identity and purpose before entry, often referred to as the knock-notice requirement, is compelled by the guarantees concerning searches and seizures contained in the Fourth Amendment to the United States Constitution. (*Parsley* v. *Superior Court* (1973) 9 Cal.3d 934, 939 [109 Cal.Rptr. 563, 513 P.2d 611].) ■ ■ An entry governed by Penal Code sections 1531 or 844 which does not comply therewith renders any search and seizure dependent thereon "unreasonable" within the meaning of the Fourth Amendment and, as a consequence, any evidence seized pursuant thereto inadmissible. (*Parsley* v. *Superior Court, supra,* 9 Cal.3d 934, 938; *Greven* v. *Superior Court* (1969) 71 Cal.2d 287, 290 [78 Cal.Rptr. 504, 455 P.2d 432].)

■ Despite the absence of legislation prescribing standards for the conduct of a search under authority of a search condition in a probation order, we conclude that probation searches are subject to implied conditions of reasonableness compelled by the provisions of the Fourth Amend-

---

[6]Penal Code section 1531 provides: "The officer may break open any outer or inner door or window of a house, or any part of a house or anything therein, to execute the warrant, if, after notice of his authority and purpose, he is refused admittance."

[7]Defendants do not now rely directly or by analogy upon Penal Code section 844 which provides: "To make an arrest, a private person, if the offense be a felony, and in all cases a peace-officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired."

Prior to trial, defense counsel in writing noticed a motion to suppress (Pen. Code, § 1538.5) accompanied by points and authorities citing section 844 and asserting that the officers violated its provisions by opening the screen door and entering without first identifying themselves and requesting admittance. No other grounds for the motion were advanced. The motion was dropped before hearing at request of defendants.

The avowed purpose of the officers in entering the premises was to conduct a search of the residence and the defendant Constancio. Both defendants were arrested on the premises but not until after illegal drugs and paraphernalia had been recovered in the search. Notwithstanding the existence of probable cause to arrest there is nothing in the record to suggest that the original intent of the officers was to effect an arrest or that an arrest was contemplated irrespective of the outcome of the search. Accordingly, the provisions of Penal Code section 844 do not govern the instant situation.

ment. (*People* v. *Mason, supra,* 5 Cal.3d 759, 765, fn. 3; *People* v. *Bremmer, supra,* 30 Cal.App.3d 1058, 1067 (concurring opn. of Roth, P. J.); *People* v. *Kern, supra,* 264 Cal.App.2d 962, 965; cf. *Russi* v. *Superior Court, supra,* 33 Cal.App.3d 160, 164, 166.) Accordingly, we test the reasonableness of the officers' conduct herein against the provisions of Penal Code section 1531 which implement the constitutional guarantees of reasonableness in a closely analogous situation.

Our Supreme Court has declared that Penal Code sections 1531 and 844 serve the following purposes and policies: "(1) the protection of the privacy of the individual in his home [citations]; (2) the protection of innocent persons who may also be present on the premises where an arrest is made [citation]; (3) the prevention of situations which are conducive to violent confrontations between the occupant and individuals who enter his home without proper notice [citations]; and (4) the protection of police who might be injured by a startled and fearful householder." (*Duke* v. *Superior Court* (1969) 1 Cal.3d 314, 321 [82 Cal.Rptr. 348, 461 P.2d 628]; *People* v. *Peterson* (1973) 9 Cal.3d 717, 723 [108 Cal.Rptr. 835, 511 P.2d 1187].) There are, however, dissimilarities between a probation search and a search under a warrant. A preliminary question therefore is whether the identical policies and purposes underlying the knock-notice provisions of the Penal Code necessarily must be observed in the conduct of a probation search.

"[P]ersons conditionally released to society, such as parolees, may have a reduced expectation of privacy, thereby rendering certain intrusions by governmental authorities 'reasonable' which otherwise would be invalid under traditional constitutional concepts, at least to the extent that such intrusions are necessitated by legitimate governmental demands. [Citations.] Thus, a probationer who has been granted the privilege of probation on condition that he submit at any time to a warrantless search may have no reasonable expectation of traditional Fourth Amendment protection." (Fn. omitted.) (*People* v. *Mason, supra,* 5 Cal.3d at pp. 764-765.) "[W]hen [a] defendant in order to obtain probation specifically agree[s] to permit at any time a warrantless search of his person, car and house, he [has] voluntarily waived whatever claim of privacy he might otherwise have had." (*Id.* at p. 766.)

Thus we conclude that the first stated policy and purpose underlying the statutory knock-notice provisions, i.e., the protection of the privacy of the individual in his home, is not impinged upon by a probation search at the probationer's place of residence since the probationer has waived his claim to privacy therein. In other significant respects, however, the conditions surrounding a probation search of a residence by law enforce-

ment officers are substantially similar to those involved with the execution of a search warrant at a residence. Therefore, the remaining policies and purposes underlying the statutory knock-notice provisions must be satisfied in the execution of a probation search of a residence. Accordingly, law enforcement officers must give notice of their authority and purpose before entering any house to conduct a search under authority of a probation order containing a search condition.[8]

At this point we are again confronted with the failure of the defendants to move to suppress or to object to the evidence for impropriety in the manner of execution of the search condition. Ordinarily this failure would be fatal to defendants' position. (*People* v. *King* (1971) 5 Cal.3d 458, 464 [96 Cal.Rptr. 464, 487 P.2d 1032]; *People* v. *De Santiago* (1969) 71 Cal.2d 18, 22 [76 Cal.Rptr. 809, 453 P.2d 353].) However, trial counsel's failure to object is assigned as evidence of incompetency of counsel. For that reason we address the merits of defendants' contention to determine whether trial counsel's omission to act, for whatever reason, operated to deprive defendants of the benefit of a crucial defense.

## IV

The case of *People* v. *Peterson, supra,* 9 Cal.3d 717, is dispositive of the merits of defendants' final contention. In that case officers went to defendant's residence to execute a search warrant therein. They stopped at the entrance to defendant's home. An inner door was open and one of the officers was able to see through a closed but unlatched screen door into the living area where in plain view a man and a woman were seated and engaged in conversation. The officer knocked several times but neither party within the dwelling responded. After waiting approximately one minute he opened the screen door, stood at the threshold, identified himself and entered after stating that he had a warrant for a search of the premises. The following search produced heroin and other contraband. Defendant appealed his conviction claiming error by the trial court in denying his motion to suppress based on lack of strict compliance with the procedural sequences set forth in Penal Code section 1531. The Supreme Court rejected defendant's contention stating, "The officers were required to comply with that statute [Pen. Code, § 1531] although the doorway was barred only by an unlocked, transparent screen door. [Citation.] [Fn. omitted.]

---

[8]As with entries governed by sections 1531 and 844, if the specific facts known to the officer before he enters are sufficient to support his good faith belief that compliance with the knock-notice requirements will increase his peril or permit the destruction of evidence, compliance therewith is excused. (*People* v. *Tribble* (1971) 4 Cal.3d 826, 833 [94 Cal.Rptr. 613, 484 P.2d 589]; *People* v. *Gastelo* (1967) 67 Cal.2d 586, 587-588 [63 Cal.Rptr. 10, 432 P.2d 706].)

"In *Greven* v. *Superior Court* (1969) 71 Cal.2d 287 [78 Cal.Rptr. 504, 455 P.2d 432], relied on by defendant, we reviewed those cases dealing with 'substantial compliance' which, although short of an exact compliance with all of the strictures of the announcement portion of the statute, nevertheless were deemed to satisfy the mandate of section 1531. In that case and the cases there reviewed we particularly inquired as to whether there had been compliance with the requirements of both notice of the officer's authority and of his purpose in demanding entry. Here, it clearly appears, the officers gave both portions of such notice. But in this case we are presented with a further question. The officers committed a technical breaking by opening the unlatched screen door before such notice was given. We must resolve whether failure to comply strictly with the step-by-step direction of the statute can be deemed to constitute substantial compliance." (Fn. omitted.) (*People* v. *Peterson, supra,* 9 Cal.3d at pp. 722, 723.)

Citing *Duke* v. *Superior Court, supra,* 1 Cal.3d 314, and *Greven* v. *Superior Court, supra,* 71 Cal.2d 287, the Supreme Court then reviewed the purposes and policies served by the statute and continued, "The question then is whether [the officer] by delaying his announcement until after he had opened the screen door frustrated or made nugatory any of the purposes and policies previously enumerated. We note that the interior of the residence and the occupants therein were visible to any member of the public who, like the officers, had proper reason to enter onto the premises and approach the visibly open doorway. Thus, no right of privacy was infringed as the opening of the screen door revealed nothing more than was already exposed to the officers' view and they did not physically intrude into the home until after the announcement.

"It is equally clear that no greater risk of violence to any person on the premises was created, as at all times after approaching and knocking the officers could clearly observe the occupants within the interior and take precautionary measures if necessary. Nor can it be argued successfully that there was a greater risk that the occupant might respond violently by reason of ignorance of the officers' identity and purpose, as the officers were immediately visible and announced their purpose to the occupants who were thus made aware of the situation and its demands. Assuredly the personal safety of the officers, as in the case of the occupants, was not subjected to any increased danger. We conclude that in the particular circumstances of this case there was substantial compliance with section 1531, and that there also has been compliance with the purposes and policies set forth in *Duke* v. *Superior Court, supra,* 1 Cal.3d 314, and *Greven* v. *Superior Court, supra,* 71 Cal.2d 287. Accordingly, the contraband found in defendant's

residence was lawfully seized and the trial court properly denied defendant's motion under section 1538.5." (Fn. omitted.) (*People* v. *Peterson, supra,* 9 Cal.3d at pp. 723-724.)

So far as the entry into the defendants' residence is concerned the instant case is identical on its facts in all material respects with the *Peterson* case. Since the knock-notice requirement, to the extent applicable to probation searches, is drawn by analogy from the provisions of section 1531, the *Peterson* case is controlling here.

 When they entered defendants' residence, the officers had not been refused admittance. Nonetheless they were not required to request admittance and await refusal thereof before entering since, as pointed out hereinbefore, defendant Constancio had already, as a condition of probation, waived any right to refuse a law enforcement officer entry to her premises to conduct a search. Furthermore, the procedures followed by the officers here were congruent with the policies and purposes of the knock-notice requirements to the extent they are applicable to probation searches. Thus the entry of the officers into defendants' residence was lawful.

Accordingly, the contention that trial counsel's failure to challenge admissibility of the evidence resulted in withdrawal of a crucial defense through inadequacy or incompetence must fail. It is not incumbent upon trial counsel to advance meritless arguments or to undertake useless procedural challenges merely to create a record impregnable to assault for claimed inadequacy of counsel.[9]

The judgments are affirmed.

Richardson, P. J., and Regan, J., concurred.

---

[9]Defendants' written motion to suppress for failure of the officers to comply with Penal Code section 844 was noticed for hearing on August 21, 1973, and filed August 15, 1973. The hearing was continued twice by consent of defendants. On September 13, 1973, the motions were dropped at request of defendants who then entered pleas of not guilty. The decision in *People* v. *Peterson, supra,* 9 Cal.3d 717, was filed July 16, 1973, and was published in the official advance sheet dated August 7, 1973. Considering the inevitable delay between publication of an advance sheet and widespread dissemination of its contents among the bar, the chronology of defendants' pretrial move to suppress evidence in relation to the emergence of the *Peterson* decision suggests that trial counsel became aware of the *Peterson* decision and was influenced thereby to abandon the motions to suppress which, though grounded on Penal Code section 844, were governed by principles of law similar to those applicable to motions based on Penal Code section 1531. (*People* v. *Peterson, supra,* 9 Cal.3d 717, 722, fn. 7.)