[No. 4562–II.   Division Two.   January 14, 1982.]

THE STATE OF WASHINGTON, *Appellant,* v. JAY
EDWARD SPARGO, *Respondent.*

*Curtis M. Janhunen, Prosecuting Attorney,* and *Michael G. Spencer, Deputy,* for appellant.

*David L. Edwards,* for respondent.

PETRICH, J.—Following an order of termination the State appeals, as permitted by RAP 2.2(b)(2), the trial court's suppression of critical evidence in a possession of controlled substance case because of noncompliance with the "knock and announce" rule.[1]

The issue on appeal is whether the reviewing court, when asked to justify noncompliance with the knock and announce rule, is limited to the information presented to the magistrate who issued the warrant and excused compliance. We believe the reviewing court is not so limited and affirm the decision below.

Defendant was arrested at approximately 2 a.m. on October 31, 1979. Three and one-half hours earlier, Aberdeen police officers had completed a "controlled buy" of marijuana. Officer Bens then obtained a search warrant, which, per his request, stated it could be served without compliance with the knock and announce rule. Officer Bens stated two facts in his affidavit in support of his belief the officers' safety would be jeopardized if they complied with the knock and announce rule: (1) Officer Bens had arrested defendant on a prior occasion for carrying a loaded pistol in

---

[1]The rule is embodied in our statute as well as in the state and federal constitution.

RCW 10.31.040:

"Officer may break and enter. To make an arrest in criminal actions, the officer may break open any outer or inner door, or windows of a dwelling house or other building, or any other inclosure, if, after notice of his office and purpose, he be refused admittance."

Washington State Constitution, article 1, section 7:

"Invasion of private affairs or home prohibited. No person shall be disturbed in his private affairs, or his home invaded, without authority of law."

United States Constitution, amendment 4:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . ."

a car and the pistol was returned to defendant; (2) Officer Bens was aware of information received by another police officer that defendant had stated to a third person on prior occasions that "if any cops try to take him the cops will be sorrow [sic]".

Seven armed officers participated in the execution of the warrant. When the officers arrived at defendant's house, it did not appear anyone in the house was awake. According to the preformulated search plan, an officer stationed at the front door yelled "police," and, within a few seconds, three officers broke through the front door, and three through the back door. As planned, there were no knocks or demands. Defendant was asleep when the police entered. The police found him in his bedroom. The search produced a .38 caliber pistol, ammunition, and marijuana, in a suitcase in a closet approximately 5 feet from defendant's bed. The gun was not loaded.

At the suppression hearing evidence was introduced that the defendant's prior arrest for carrying a weapon, by Officer Bens, occurred 15 months earlier in July 1978; and that the statement attributed to the defendant suggesting police animosity was related to an Aberdeen police officer, other than Officer Bens, by an unnamed individual, 1½ years prior to the entry and arrest under review. Furthermore, over the State's objection, evidence was introduced that on three prior occasions, all within approximately 5 weeks of the instant arrest, Aberdeen police officers contacted defendant at his house, all without any destruction or threatening conduct on the part of defendant. One of the officers present at the instant entry and arrest participated in two of the prior confrontations. Based on the foregoing evidence, which was unrefuted by the State, the court found:

    (1) That seven police officers armed with shotguns and revolvers forcibly entered the residence of defendant on October 31, 1979, in the course of executing a search warrant.

    (2) That the officers did not knock on the door, did

not announce their identity, nor did they demand entry prior to forcibly entering the residence of the defendant.

(3) That the defendant's house was darkened and quiet prior to the entry by the police officers.

(4) That members of the Aberdeen Police Department, and some of the same officers who executed the search warrant, had been to the residence of the defendant at least three times during the month of October, 1979, without incident. That on two of those three occasions, officers knocked on the door of the defendant's residence in the nighttime and were permitted entry to the residence by the defendant without resistance or incident.

From these facts the trial court concluded that the police did not comply with the knock and announce requirements of the law; that the information relied on by the officers to justify noncompliance was ambiguous, stale, and inherently unreliable; and that the officers' concern for their safety was unreasonable in light of the numerous recent contacts with defendant at his residence. The trial court then suppressed the seized evidence.

■ The State in its brief makes no assignment of error to the trial court's findings at the suppression hearing. Such unchallenged findings are verities on appeal. *State v. Christian*, 95 Wn.2d 655, 628 P.2d 806 (1981). The State urges, however, that the court ought to be limited to only those matters presented to the issuing magistrate as in those cases reviewing the existence of probable cause to support issuance of a warrant, relying on *Aguilar v. Texas*, 378 U.S. 108, 109 n.1, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964); and that the magistrate's excuse of noncompliance is comparable to the determination of probable cause by the issuing magistrate which is entitled to great deference and should only be set aside on a showing of an abuse of discretionary power, relying on *Jones v. United States*, 362 U.S. 257, 4 L. Ed. 2d 697, 80 S. Ct. 725, 78 A.L.R.2d 233 (1960); *State v. Patterson*, 83 Wn.2d 49, 515 P.2d 496 (1973). We believe such a position is unsound.

■ Although treated only by a footnote by this court in *State v. Jeter,* 30 Wn. App. 360, 634 P.2d 312 (1981), the proposition stated, namely, that a prior "no knock" authorization is superfluous and that justification of an unannounced entry must be based on specific facts known to the officers executing the warrant, is a sound one.

We are aware that other jurisdictions have divergent views on "no knock" warrants. *See* 2 W. LaFave, *Search and Seizure* § 4.8, at 138 (1978). We find persuasive, however, the reasoning of the Supreme Court of California in *Parsley v. Superior Court,* 9 Cal. 3d 934, 513 P.2d 611, 109 Cal. Rptr. 563 (1973), in which it invalidated "no knock" warrants. In *Parsley,* the court observed that although there were common law exceptions to the "knock and announce" rule, there is no common law doctrine empowering courts to authorize advance noncompliance. It further observed that the California statute, which is comparable to RCW 10.31.040, provides no authority for inserting directions in warrants excusing compliance with its express provisions. Such a procedure then could be instituted by the court only if constitutionally mandated. In support of its conclusion that prior judicial authorization is not so mandated, the *Parsley* court said at pages 939–40:

While the requirements of announcement before entry have been held to be compelled by the guarantees against search and seizure contained in the Fourth Amendment (*Ker* v. *California* (1963) 374 U.S. 23, [10 L.Ed.2d 726, 83 S.Ct. 1623]; *People* v. *Gastelo* (1967) *supra,* 67 Cal.2d 586, 588–589), police officers have no constitutional duty to obtain prior judicial authorization to enter without notice. The proposition that searches without a warrant are unreasonable per se except in a few narrowly defined circumstances does not apply to the issue of unannounced entry. The reason for this distinction is that information providing *probable cause for the issuance of a search warrant is of a different nature and source than information justifying unannounced entry.* While a search warrant must necessarily rest upon previously obtained information, unannounced entry is excused only on the basis of exigent circumstances existing at the time

an officer approaches a site to make an arrest or execute a warrant. Facts existing at the time of obtaining a warrant may no longer exist at the time of entry. Such an emergency, therefore, can be judged only in light of circumstances of which the officer is aware at the latter moment. Previously obtained information may at that time be taken into account in determining the necessity of dispensing with ordinary announcements (*People* v. *Dumas* (1973) *ante,* pp. 871, 877–879 [109 Cal.Rptr. 304, 512 P.2d 1208]), but a more significant factor in this decision is perception and knowledge the officer acquires on the scene immediately prior to effecting entry. For this reason, earlier judicial authorization would be largely inappropriate in the context of unannounced entry and, thus, clearly cannot be considered a constitutional requirement.

. . .

. . . As discussed above, the key to permissible unannounced entry is the knowledge of exigent circumstances possessed by police officers at the time of entry. Thus, from the viewpoint of a court reviewing justification for an unannounced entry after the fact a warrant authorizing such action adds nothing.

Not only do we believe the State's position is unsound, but a rule which authorized advance noncompliance may well develop into an unwise impediment to law enforcement agencies. Approval of warrants authorizing noncompliance with the knock and announce rule would undoubtedly lead to future challenges to seized evidence in which exigent circumstances clearly existed, but where approval in advance was either not requested or was denied by the issuing magistrate. The defendant in *Dalia v. United States,* 441 U.S. 238, 60 L. Ed. 2d 177, 99 S. Ct. 1682 (1979), attempted to suppress evidence obtained by previously installed surveillance equipment for the reason that the court's authorization to install the equipment did not specify that the installation could be made by a covert entry which was employed by the government. In rejecting such an argument, the court in *Dalia* said, at page 258:

It would extend the Warrant Clause to the extreme to require that, whenever it is reasonably likely that Fourth

Amendment rights may be affected in more than one way, the court must set forth precisely the procedures to be followed by the executing officers. Such an interpretation is unnecessary, as we have held—and the Government concedes—that the manner in which a warrant is executed is subject to later judicial review as to its reasonableness.

The trial court in the instant case was not restricted then to those matters presented to the issuing magistrate who authorized noncompliance with the knock and announce rule. Because the State did not carry its burden of establishing exigent circumstances to excuse compliance in accordance with the rules adopted in *State v. Coyle,* 95 Wn.2d 1, 621 P.2d 1256 (1980); *State v. Young,* 76 Wn.2d 212, 455 P.2d 595 (1969); *State v. Jeter, supra;* and *State v. Wilson,* 9 Wn. App. 909, 515 P.2d 832 (1973), the judgment of the trial court is affirmed.

PETRIE, A.C.J., and PEARSON, J., concur.