**Willie DOSS, Appellant,**

v.

**Mace Rich FRONTENAC, doing business as Plaza Frontenac Associates, L.P., Appellee.**

No. 93–1108.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 9, 1993.

Decided Feb. 2, 1994.

Jay L. Kanzler, Jr., St. Louis, MO, argued, for appellant.

Robert J. Krehbiel, St. Louis, MO, argued (Joy R. Urbom, on the brief), for appellee.

Before McMILLIAN, Circuit Judge, HENLEY, Senior Circuit Judge, and MAGILL, Circuit Judge.

McMILLIAN, Circuit Judge.

Willie Doss appeals from a final judgment entered in the United States District Court[1] for the Eastern District of Missouri, upon a jury verdict, finding that his employer, Mace Rich Frontenac (Frontenac), did not discharge him on the basis of his race in violation of the Missouri Human Rights Act, Mo. Rev.Stat. § 213.010 *et seq.* (1986) (MHRA), and, upon a bench trial, finding that Frontenac did not violate Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Title VII). *Doss v. Mace Rich Frontenac,* Civ. No. 91–2024C(5) (E.D.Mo. Dec. 17, 1992). For reversal, Doss argues that the district court (1) erred in permitting Frontenac to use its peremptory challenges to strike African–American venirepersons, (2) abused its discretion in excluding exhibits relating to the Equal Employment Opportunity Commission's (EEOC) investigation of Doss' complaint, and (3) erred in denying Doss' motion for a new trial because the jury's finding that Frontenac did not discriminate against Doss is not supported by sufficient evidence. For the reasons discussed below, we affirm the judgment of the district court.

## I. BACKGROUND

In November 1990, Doss, an African–American, was employed as a housekeeper at Plaza Frontenac Mall, owned by Frontenac. Doss' supervisor was Dave Freeburg, a Caucasian. The housekeeping department consisted of six African–American males and one Caucasian male, James Oellermann. On November 16, 1990, Doss was treated for an injury to the heels of both his feet and obtained a note from his physician stating that

---

1. The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri.

he was not able to perform heavy lifting. On November 17, 1990, Doss was asked by a coworker to help raise a large, heavy Christmas tree up to the second floor of the mall. Doss refused. On November 23, 1990, Freeburg terminated Doss.

Doss filed suit in federal district court against Frontenac under Title VII and the MHRA, alleging that his discharge was the result of race discrimination. Doss claimed discrimination based on a theory of disparate treatment arguing that he was treated less favorably than his Caucasian coworker Oellermann who also suffered from a medical condition affecting his ability to move heavy items. After the MHRA claim was tried to a jury, a verdict was returned in favor of Frontenac. Because the parties agreed that the facts presented to the jury on the MHRA claim were the same facts supporting the Title VII claim, the district court held that it was collaterally estopped from finding against the defendant with respect to the Title VII claim. Accordingly, the district court entered judgment in favor of Frontenac on both claims.

The district court denied Doss' motion for a new trial and this appeal followed. On appeal, Doss contends that a new trial is warranted because Frontenac impermissibly used its two peremptory challenges to strike African–American venirepersons, the district court abused its discretion by excluding exhibits relating to an EEOC investigation of Doss' charge, and the jury's verdict is not supported by sufficient evidence.

## II. DISCUSSION

### A. The *Batson* Issue

■ Doss first contends the district court erred in permitting Frontenac to use its peremptory challenges to strike African–American venirepersons.

At the conclusion of voir dire on December 7, 1992, each side exercised its two peremptory challenges granted by the district court. Frontenac used one of its peremptory challenges to strike the only African–American venireperson, Carla T. Banks. Doss objected, claiming that Frontenac had used its peremptory challenge to impermissibly strike

Banks because of her race. The district court afforded Frontenac the opportunity to articulate a race-neutral reason for the peremptory challenge. Frontenac explained that the basis for its challenge was that Banks did not raise her hand when the jury panel was asked if any member of the panel had ever experienced discrimination based on race or religion. Frontenac reasoned that "in this day and age, with discrimination based on race being as pervasive as it is, it's just incredible to me that this lady has never ever in her life been confronted with any racial discrimination." [Tr. mistrial, pp. 42–44.] The district court found that Frontenac's reason did not constitute a race-neutral reason for striking Banks and declared a mistrial. [*Id.*, pp. 44–45].

On the following day, a new venire panel composed of eleven prospective jurors was presented, and jury selection commenced for a second time. The venirepersons were questioned about their various employment experiences, including whether they believed they had experienced any form of discrimination during the history of their employment.

The venirepersons responded in the following manner: (1) Mr. Sacks, a Caucasian male, stated that he had filed a civil suit against his employer because he believed he had been discharged for age-related reasons, and that he and his employer eventually settled the matter; (2) Karen May, an African–American female, stated that she had been unfairly terminated while on maternity leave; (3) Carol Lockett, an African–American female, stated that she had been laid off from her employment after an unfair performance evaluation, and that she filed a complaint with an officer at her company, possibly an EEOC officer; (4) Jean Bierman, a Caucasian female, stated that she believed her husband had been unfairly discharged from his employment because of age-related reasons.

At the conclusion of voir dire, the district court announced that the jury would be composed of seven persons, and each side would be allowed two peremptory challenges. The district court then asked whether there were any challenges for cause. Doss had no challenges for cause. Frontenac challenged

Lockett for cause, expressing concern over her unfortunate experience with her employer and the fact that she noticeably hesitated before stating that she could be a fair and impartial juror in the case. The district court acknowledged that Lockett "had indeed hesitated before she finally replied that she could be fair," but denied the challenge for cause noting that a peremptory challenge would be more proper. [Voir Dire Tr. pp. 44–45]. The district court then excused Sacks with consent by counsel for both sides because he had a business trip that conflicted with the trial.

Each party then exercised its two peremptory challenges. Frontenac used its challenges to strike Karen May and Carol Lockett. Doss objected to the peremptory strikes of May and Lockett on grounds that Frontenac had impermissibly excused these African–American venirepersons because of their race. The district court afforded Frontenac the opportunity to articulate a race-neutral reason for striking May and Lockett. Frontenac claimed it excused Lockett because of her belief that she had been unfairly evaluated and discharged by her employer coupled with her hesitation when asked whether she could participate as a fair and impartial juror. Frontenac claimed it excused May because she believed she had been unfairly discharged by her employer while on maternity leave. The district court denied Doss' objections finding that "both of the challenges have a sufficient reason that they could not be automatically determined to be something other than racially neutral." [Tr. vol. I, p. 19].

Doss contends the district court erred in overruling his objections because Frontenac's peremptory challenges of May and Lockett violated his equal protection rights. Doss contends that the combination of Frontenac's discriminatory peremptory challenge of Banks during the first voir dire, Frontenac's challenge of Lockett for cause, and its peremptory challenges of May and Lockett during the second voir dire evince a "pattern" of strikes against African–American venirepersons that gives rise to an inference of purposeful discrimination. We disagree.

The Supreme Court has held that race discrimination in the form of exercising peremptory challenges to exclude African–American venirepersons violates a criminal defendant's fourteenth amendment equal protection rights. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (*Batson*). In *Edmonson v. Leesville Concrete Co.,* 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991) (*Edmonson*), the Court extended the *Batson* rationale to civil suits holding that a private litigant in a civil case may not use peremptory challenges to exclude venirepersons because of race.

■ In order to succeed on a *Batson* challenge, a party must satisfy a three-part test. 476 U.S. at 96, 106 S.Ct. at 1722. First, the objecting party must establish a prima facie showing that the venireperson was excluded because of his or her race. Once that party makes a prima facie showing, the burden shifts to the challenging party to offer a race-neutral reason for challenging the minority juror that is "clear and reasonably specific" and related to the case to be tried. *Id.* at 98, 106 S.Ct. at 1724. The court must then determine whether the objecting party has proven the ultimate question of intentional discrimination. *Hernandez v. New York,* 500 U.S. 352, ——, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991).

■ A district court's finding of purposeful discrimination in the jury selection process is a question of fact which we will reverse only if the findings were clearly erroneous. *United States v. Dawn,* 897 F.2d 1444, 1447 (8th Cir.1990).

Here, the district court found that, after Doss established a prima facie case of discrimination in the striking of May and Lockett, Frontenac articulated a race-neutral reason justifying its challenges, namely, May's and Lockett's perceptions that they had been unfairly discharged from their employment. Doss contends that this reason is pretextual because Bierman, a Caucasian, had stated that she believed her husband had been unfairly discharged for age-related reasons, and yet, Frontenac did not exercise a peremptory challenge against Bierman. It is well-established that peremptory challenges cannot be lawfully exercised against potential jurors of

one race unless potential jurors of another race with comparable characteristics are also challenged. *See Reynolds v. Benefield,* 931 F.2d 506, 512 (8th Cir.1989) (proffered race-neutral reason is pretextual if the challenger fails to strike potential jurors who have the same traits or qualities as stricken jurors). However, Frontenac's failure to exercise a peremptory challenge against Bierman does not amount to a violation of the concept of "comparability." Bierman's exposure to an allegedly discriminatory employment experience was a vicarious one because it involved her spouse's discharge. In sharp contrast, May and Lockett recounted their own personal employment experiences.[2]

Doss also claims that Frontenac's attempt to challenge Lockett for cause bolsters his claim of purposeful discrimination. Doss contends that Sacks, a Caucasian male, went unchallenged even though "clearly comparable" to Lockett because both believed they had been discriminated against by their employer. Contrary to Doss' contention, the record shows that Frontenac initially challenged Lockett for cause in large part because Lockett, unlike Sacks, had noticeably hesitated before stating that she could sit as a fair and impartial juror. Further, Frontenac did not challenge May for cause even though she too could be considered "comparable" to Lockett under Doss' theory of comparability. Frontenac's failure to challenge May for cause belies any claim that Frontenac exercised its challenges for cause in a racially discriminatory fashion.

■ Doss claims further that Frontenac's peremptory challenges against May and Lockett were pretextual because the district court had already found that Frontenac committed *Batson* error when it exercised a peremptory challenge against Banks during the first voir dire. However, the fact that one challenge was sustained on *Batson* grounds does not establish the validity of other *Bat-*

son challenges which are rebutted by sufficiently neutral explanations. *See United States v. Baker,* 855 F.2d 1353, 1360 (8th Cir.1988) (government articulated sufficient race-neutral reasons to justify three of its peremptory challenges even though three other challenges violated *Batson* ).

■ The trial judge's findings regarding purposeful discrimination largely turn on credibility determinations and are thus afforded great deference by this court on appeal. *Batson,* 476 U.S. at 98 n. 21, 106 S.Ct. at 1724 n. 21. In the present case, the district court, having previously determined that Frontenac committed *Batson* error in challenging Banks during the first voir dire, heard Frontenac's full explanation of its use of peremptory challenges against May and Lockett and was satisfied as to the truthfulness and neutral character of that explanation.

The district court's analysis of Doss' claim of purposeful discrimination is entirely consistent with *Batson.* We hold that the district court's findings that Frontenac articulated race-neutral reasons related to the particular case for its peremptory challenges of May and Lockett are not clearly erroneous.[3] Frontenac legitimately may have believed that May's and Lockett's abilities to sit as fair and impartial jurors might be affected by their personal experiences of employment discrimination. Peremptory challenges are intended to give validity to this exact type of judgment, to conclusions which, while not sufficient to justify a challenge for cause, nonetheless raise the possibility of bias. *See United States v. Wilson,* 867 F.2d 486, 488 (8th Cir.1989) (citing *Batson,* 476 U.S. at 97, 106 S.Ct. at 1723).

## B. Exclusion of Exhibits

■ Doss argues that the district court abused its discretion in sustaining Fronte-

---

2. Had Sacks not been excused prior to the time when the parties exercised their peremptory challenges, he would have provided a basis for comparison.

3. Unless peremptory challenges are eliminated entirely, we cannot conclude that the facts in the present case clearly demonstrate an improper

use of the peremptory challenge. *See Batson v. Kentucky,* 476 U.S. 79, 102, 106 S.Ct. 1712, 1726, 90 L.Ed.2d 69 (1986) (Marshall, J., concurring) ("the racial discrimination that peremptories inject into the jury-selection process" can be cured only by "eliminating peremptory challenges entirely").

nac's objections to Doss' exhibits 7 and 17 and *sua sponte* excluding Doss' exhibits 4, 5 and 6.

Doss' exhibit 5 was a determination letter from the EEOC finding no race discrimination. Exhibits 6 and 17 were position statements by Dave Freeburg, Doss' supervisor, to the EEOC. Exhibit 7 was a note from Doss' physician regarding his medical condition,[4] and exhibit 4 was a letter from Freeburg to Frontenac regarding the EEOC charges brought by Doss. Doss contends that these exhibits would have helped show that Frontenac's purported non-discriminatory reason for discharging him, Doss' refusal to help a coworker lift the Christmas tree, was a mere pretext for discrimination.

Doss contends that the exhibits contain misleading statements by Freeburg which caused EEOC investigators to reach the determination that Doss had not been a victim of race discrimination. Doss argues that the exhibits contain Freeburg's statements that he was unaware of Doss' medical condition when he discharged him, when evidence adduced at trial was to the contrary. Doss maintains that the excluded exhibits also would have shown that Doss was treated less favorably than a similarly situated Caucasian employee, James Oellermann. Doss contends that the inconsistencies between the excluded evidence and the trial evidence would have persuaded the jury to disbelieve Freeburg's account of his motive for discharging Doss, and, therefore, the district court's decision to exclude the evidence deprived him of a fair opportunity to prove his case. We disagree.

■ We review the district court's exclusion of evidence for abuse of discretion. *Warner v. Transamerica Ins.*, 739 F.2d 1347, 1350 (8th Cir.1984). In an employment discrimination case, the decision whether to admit or exclude administrative findings, such as EEOC investigation matters, is properly left to the sound discretion of the trial court. *Johnson v. Yellow Freight System, Inc.*, 734 F.2d 1304 (8th Cir.), *cert. denied*, 469 U.S. 1041, 105 S.Ct. 525, 83 L.Ed.2d 413 (1984).

Doss was not deprived of the ability to impeach Freeburg's testimony. Contrary to Doss' contentions, the record reflects that, when Doss informed the district court that he believed that exhibit 4, the letter from Freeburg to Frontenac, could be used to impeach Freeburg's anticipated testimony, the district court reserved its ruling on whether the exhibit could be used for impeachment until the time when Freeburg would actually testify. Yet, Doss never attempted to introduce exhibit 4 for impeachment at any time during trial. Doss' failure to attempt to use exhibit 4 during trial cannot be blamed on the district court. *See Royal v. Missouri Highway & Transp. Comm'n*, 714 F.2d 867, 869 (8th Cir.1983).

Doss contends that exhibits 5, 6 and 17 contained statements from Freeburg which misled the EEOC, caused the EEOC to find that Doss was not treated differently from his Caucasian coworker Oellermann, and thus prejudiced his ability to present his case to the jury. We fail to see the how the EEOC's determination that Doss was not a victim of race discrimination, or the EEOC's alleged reliance on misleading evidence, prejudiced Doss' right to present his civil case to the jury. Doss was given a full and fair trial and the opportunity to present the substantive matter contained in exhibits 5, 6, and 17 directly to the jury, including the right to present any disparate treatment arguments relating to Oellermann. The jury could therefore decide whether Doss had been treated less favorably than Oellermann.

We hold that the district court did not abuse its discretion in excluding exhibits 4, 5, 6, 7, and 17.

### C. Sufficiency of Evidence

■ Doss argues that the jury's finding that Frontenac did not discharge him on the basis of his race is not supported by sufficient evidence. Doss contends that he was treated less favorably than Oellermann for race-motivated reasons.

---

4. We note that Doss' brief is devoid of any argument as to why the district court abused its

discretion in excluding exhibit 7.

Upon reviewing whether sufficient evidence exists to support the jury's finding regarding liability, "we consider the evidence in the light most favorable to [Frontenac], as the prevailing party, assume that all conflicts of evidence were resolved in favor of [Frontenac], assume as proved all facts which [Frontenac's] evidence tends to prove, and give [Frontenac] all favorable inferences which may be reasonably drawn from the evidence." *Finley v. Empiregas, Inc.*, 975 F.2d 467, 474 (8th Cir.1992) (citing *Morgan v. Arkansas Gazette*, 897 F.2d 945, 948 (8th Cir.1990)).

Applying this standard of review, we hold that sufficient evidence exists to support the finding that Doss was not discharged because of his race. Frontenac presented evidence at trial that, at the time Doss was discharged, his job performance was unsatisfactory. Frontenac presented evidence that Doss had a history of performance problems documented in his employment file, including failing to follow directions from supervisors, refusing to complete assigned tasks such as changing fluorescent lamps and "pulling trash containers," failing to clock out, and displaying disrespect and insubordination to his supervisor in front of coworkers. Doss had received several verbal warnings and two written warnings for refusing to perform job assignments. By sharp contrast, Oellermann had not been issued any written or verbal warnings, nor had he ever refused to perform any job assignment. Frontenac presented evidence from which a reasonable factfinder could conclude that Doss was discharged for legitimate reasons, not because of his race.

Accordingly, we affirm the judgment of the district court.