[No. C016685. Third Dist. Dec. 4, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN DONALD DUNN, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II and III.

### Counsel

James S. Thomson, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Maureen A. Daly and George M. Hendrickson, Deputy Attorneys General, for Plaintiff and Respondent.

### Opinion

SCOTLAND, J.—A jury convicted defendant John Donald Dunn of first degree murder (Pen. Code, §§ 187, 189)[1] and found he personally used a firearm in the commission of the offense (§ 12022.5, subd. (a)). The trial court modified the verdict (§ 1181, subd. 6) to second degree murder because the court was not satisfied beyond a reasonable doubt that the killing was deliberate and premeditated. Sentenced to the upper term of five years for the section 12022.5 enhancement and to a term of fifteen years to life for second degree murder, defendant appeals claiming the trial court erred in denying his *Wheeler* motions (*People* v. *Wheeler* (1978) 22 Cal.3d 258 [148 Cal.Rptr. 890, 583 P.2d 748] [hereafter *Wheeler*]), committed *Doyle* error

---

[1]Further section references are to the Penal Code unless otherwise specified.

(*Doyle* v. *Ohio* (1976) 426 U.S. 610, 618 [49 L.Ed.2d 91, 98, 96 S.Ct. 2240]), and erred in imposing the upper term for the section 12022.5 enhancement.

In the published portion of this opinion, we reject defendant's contention that a comparative analysis of the prospective jurors who were excused by the prosecutor's peremptory challenges and those who were chosen to serve on the jury reveals that the race-neutral reasons stated by the prosecutor for excluding four Blacks from the jury panel were pretextual and the challenges were discriminatory in violation of *Wheeler*. Defendant acknowledges the California Supreme Court has held that, in reviewing a claim of *Wheeler* error, "an appellate court will not reassess good faith by conducting its own comparative juror analysis." (*People* v. *Montiel* (1993) 5 Cal.4th 877, 909 [21 Cal.Rptr.2d 705, 855 P.2d 1277].) Nevertheless, he asserts that federal constitutional jurisprudence, which is binding on the states, compels an appellate court to perform a comparative juror analysis, and to overturn the trial court's determination that a prosecutor acted in good faith in excusing Blacks from the jury panel, if the appellate court concludes the prosecutor's race-neutral reasons for those peremptory challenges were pretextual because the prosecutor did not excuse non-Black prospective jurors with similar characteristics. He is wrong. The United States Supreme Court has not ruled on whether appellate review of peremptory challenges must include a comparative juror analysis. Although some federal circuit court decisions have applied such an analysis, it is not universally accepted by all circuit courts that a comparative juror analysis is required on review. We are not persuaded by, and thus need not follow, federal lower court decisions which suggest that appellate courts must undertake a comparative juror analysis. As we shall explain, those decisions fail to recognize numerous practical considerations which make a comparative analysis unworkable on review. Moreover, if the defendant believes the nondiscriminatory reasons stated by the prosecutor for excusing a prospective juror are pretextual, it is the defendant's burden in the trial court to bring forth evidence of inconsistencies in the prosecutor's exercise of peremptory challenges as a basis supporting the defendant's claim of pretext. In this case, defendant failed to do so. Not having been alerted to any need for an explanation of why he accepted prospective jurors with characteristics similar to those he excused, the prosecutor was deprived of the opportunity to create a record on this point. Without such an explanation, any attempt at comparative juror analysis is questionable. In any event, the record fails to support a claim that the prosecutor's race-neutral reasons were pretextual. Although jurors who were accepted had characteristics consistent with the reasons stated by the prosecutor for excusing a number of Black members of the jury panel, there are additional facts concerning the chosen jurors which distinguish them from

those who were excused by the prosecutor. Furthermore, the final jury, which the prosecutor accepted while he still had two peremptory challenges available, included two Blacks, which supports a finding that the prosecutor did not act with discriminatory intent in excusing the other Black members of the jury panel. Despite defendant's protestations to the contrary, the fact that the prosecutor accepted Blacks on the jury is a valid, though not necessarily dispositive, consideration in determining whether the prosecutor violated *Wheeler* in excusing other Blacks from the jury panel.

In addition, we reject defendant's assertion that the prosecutor impermissibly excused prospective jurors whom the prosecutor believed would not have sympathy for the victim under the facts of this case. In defendant's view, it was improper for the prosecutor to have relied upon this reason because "[i]t has long been the law that jurors are not to allow such feelings as pity or sympathy affect their deliberations and verdict" and jurors are so instructed. The contention has no merit. One of the purposes for peremptory challenges is to permit an attorney to remove from the jury panel those who have individual characteristics which the attorney believes might make them sympathetic to the opposing party.

In the unpublished parts of our opinion, we conclude that the prosecutor did not commit *Doyle* error, and the court properly imposed the upper term for the section 12022.5 enhancement. Accordingly, we shall affirm the judgment.

## FACTS

The murder victim, Robert Johnson, and his friend, Mark Williams, occasionally got into physical altercations. About a week and a half before his death, Johnson punched Williams, knocking him to the ground. The next day, Williams retaliated by striking Johnson in the jaw. After being hit, Johnson said something about getting a gun, and went to his car. He removed a "breaker bar" from the trunk, but another friend interceded and "calmed the situation down." Williams did not take the threat seriously, and the two friends reconciled. The day before he was killed, Johnson visited Williams's home without incident.

On the day of the murder, defendant and Williams were riding in Williams's truck. Williams placed a loaded handgun between the seats of the truck, saying he was afraid Johnson would shoot him or have him shot because Johnson "couldn't whip [Williams's] ass straight up." Williams and

defendant eventually stopped at a residence. Williams went inside while defendant remained in the truck.

Soon thereafter, Johnson and another man arrived at the residence and parked in front of the truck occupied by defendant. Johnson, who recently had ingested methamphetamine, told his companion that he wanted to "whup [Williams's] ass" because Williams had "sucker punched" him.

Johnson knocked on the door, and Williams joined him outside. Johnson, who was unarmed, punched Williams in the face and an altercation ensued. Defendant retrieved the handgun, jumped from the truck, and shot and killed Johnson. Defendant then yelled, "Let's go." Williams got into the truck, and they sped away.

Defendant testified that he intended to display the gun to prevent "anything from coming down," and that the gun discharged accidentally when he slipped while exiting the truck.

## DISCUSSION

### I

Defendant contends the trial court erred in denying his *Wheeler* motions. In defendant's view, the prosecution failed to rebut a prima facie showing that it exercised peremptory challenges against prospective jurors Rover, Godbold, Chism and Ware only because they are Black.[2]

Defendant's first *Wheeler* motion was made after the prosecutor used peremptory challenges to excuse prospective jurors Rover, Godbold and Chism.

The court observed that, of six Black prospective jurors, the prosecutor "excused three of the four who had found their way to the box." The prosecutor replied that he challenged Rover and Godbold because they have

---

[2]Although he is Caucasian and the challenged jurors are Black, defendant is entitled to object to race-based exclusions of jurors effected through peremptory challenges whether or not he and the excluded jurors share the same race. (*Powers* v. *Ohio* (1991) 499 U.S. 400, 402-403 [113 L.Ed.2d 411, 419-420, 111 S.Ct. 1364].)

relatives who are drug addicts.[3] According to the prosecutor, Chism was challenged because (1) he had a number of friends who had "contacts with law enforcement," and he did not give "very detailed statements" about those contacts,[4] and (2) he "talk[ed] about shooting a gun on the Fourth of July, which is obviously in violation of local rules and ordinances against shooting handguns."[5]

As to the latter point, the court interjected, "I don't know. [Chism] didn't say where he was when he did it." The prosecutor replied that he assumed Chism's gun use was illegal, and it was dangerous in any event. The prosecutor further explained that the defense would claim the homicide was accidental and "a juror who's willing to discharge a firearm in the manner in which he's described, would be more apt to believe that particular statement."

Following a discussion among the court and counsel concerning a Black prospective juror who remained on the panel, the prosecutor reiterated that he excused Chism because, given his testimony concerning shooting guns on the Fourth of July, he "might buy into the defense's argument." The prosecutor further explained that Godbold was excused because his "response about his uncle being a drug addict near Sacramento, he knows him well, I felt is too close where we're at in this particular case," and that Rover was excused due to "the same close ties to a relative who has drug problems."

The court denied the *Wheeler* motion, finding "there are arguable reasons other than race" for which the peremptory challenges were exercised.

---

[3]Rover stated her aunt has been a drug abuser for years. Godbold indicated his uncle, with whom he is "close," was "into rock" and "just recently" was involved in a "situation" for which he was not prosecuted.

[4]The following colloquy occurred between Chism and the prosecutor during voir dire: "[PROSECUTOR]: Mr. Chism, are you—I note that you have down here on line 12, relating to someone being charged with a crime. Is that—[CHISM]: I just got friends and so forth. [PROSECUTOR]: And can you tell me how many friends? [CHISM]: Not really any close ones. I have got a—my brother's son that is kind of mixed up. That kind of stuff. [PROSECUTOR]: And what sort of stuff is that? Drugs? [CHISM]: He was done for a rape. And I think that was dismissed. [PROSECUTOR]: And what other cases? [CHISM]: That is about it. [PROSECUTOR]: You said you had some other people that you know, some friends that have been charged? [CHISM]: Oh, yeah, you know, just neighborhood people. [PROSECUTOR]: What sort of charges? [CHISM]: I know a person that is for possession. And one for burglary. [PROSECU-TOR]: Possession of? [CHISM]: Crack and—[PROSECUTOR]: And? [CHISM]: Burglary of a— [PROSECUTOR]: Someone else? [CHISM]: Yes, a car."

[5]After the prosecutor asked prospective jurors if they were familiar with handguns, the following colloquy occurred: "[CHISM]: I don't own one now. But I have had practice with a .35, and shotgun. Fourth of July, used to be the thing; everybody got their guns out and everybody shooting. . . . [PROSECUTOR]: Let me know where you are on Fourth of July."

The defense renewed its *Wheeler* motion after the prosecutor exercised a peremptory challenge to prospective juror Ware. The prosecutor explained that Ware might be biased against the prosecution because her uncle was convicted of murder, the same offense with which defendant was charged.[6] The prosecutor also stated that "the way [Ware] was sitting down, the way she was frowning" and her apparent "lack of . . . any sort of interest in the proceedings" suggested she could not be an impartial juror.

The court commented that the prosecutor was giving "a terrible impression" in that "the panel thinks you are taking off all the black people." Noting there was at least one other Black still on the jury, the prosecutor denied a racial motive for challenging Ware. He said he could not leave her on the panel because of her uncle's conviction. The court replied that Ware's uncle was convicted "a long time ago in the Virgin Islands, and she expressed hardly any knowledge of it, nor any interest."

After further discussion among the court and counsel, the prosecutor again denied excusing prospective jurors for racial reasons, stating he challenged them because they either had "close ties to family members that are drug users" or had "a relative who's been convicted of a murder . . . ."

Pointing out that the victim in this case used drugs, the court asked the prosecutor whether the excused prospective jurors might not have been sympathetic to the victim as a result. The prosecutor replied the answer depended on the facts; he noted that prospective juror Nevarez, whom the prosecutor intended to challenge, had called her drug-using relative a "lowlife."

Reiterating that the challenged Black prospective jurors had relatives who included drug abusers and a convicted murderer, the prosecutor stated: "And I think that whether you think there is a perception on the part of these people, those involved in these activities, they are a violent group. That's going to be the defense. Their defense is that the victim is on methamphetamine and he's violent."

The court then denied the second *Wheeler* motion without elaboration. Defendant acknowledges that, when the jury was sworn, it contained two Black jurors.

■ The law relating to a claim of *Wheeler* error is well established. "[T]he use of peremptory challenges to remove prospective jurors solely on the basis of a presumed group bias based on membership in a racial group

---

[6] Ware stated her uncle was convicted of murder in the Virgin Islands about 15 years before.

violates both the state and federal Constitutions." (*People* v. *Turner* (1994) 8 Cal.4th 137, 164 [32 Cal.Rptr.2d 762, 878 P.2d 521].) "Peremptory challenges are permissible only if they are based on specific bias," i.e., " 'a bias relating to the particular case on trial or the parties or witnesses thereto.' " (*People* v. *Tapia* (1994) 25 Cal.App.4th 984, 1013 [30 Cal.Rptr.2d 851].) If the defendant makes a prima facie case that a peremptory challenge was racially motivated, "the burden shifts to the prosecution to provide a 'race-neutral explanation related to the particular case to be tried' for the peremptory challenge. . . . However, the explanation need not be sufficient to justify a challenge for cause. . . . Jurors may be excused based on 'hunches' and even 'arbitrary' exclusion is permissible, so long as the reasons are not based on impermissible group bias." (*People* v. *Turner, supra*, at pp. 164-165, citations omitted; *Purkett* v. *Elem* (1995) __ U.S. __, __ [131 L.Ed.2d 834, 839-840, 115 S.Ct. 1769].)

The trial court must satisfy itself that the prosecutor's race-neutral explanation is genuine. " 'This demands of the trial judge a sincere and reasoned attempt to evaluate the prosecutor's explanation in light of the circumstances of the case as then known, his knowledge of trial techniques, and his observations of the manner in which the prosecutor has examined members of the venire and has exercised challenges for cause or peremptorily . . . .' " (*People* v. *Fuentes* (1991) 54 Cal.3d 707, 718 [286 Cal.Rptr. 792, 818 P.2d 75].)

■ " ' "Because *Wheeler* motions call upon trial judges' personal observations, we view their rulings with 'considerable deference' on appeal. . . . If the record 'suggests grounds upon which the prosecutor might reasonably have challenged' the jurors in question, we affirm." ' " (*People* v. *Crittenden* (1994) 9 Cal.4th 83, 117 [36 Cal.Rptr.2d 474, 885 P.2d 887], citations omitted.) Where "the record reflects a conscientious determination by the trial court that the prosecutor predicated his peremptory challenges . . . upon his perception of an individual bias on the part of each juror, and not on the basis of group bias . . . [t]he record . . . fails to support defendant's claim of *Wheeler* error." (*People* v. *Sims* (1993) 5 Cal.4th 405, 431-432 [20 Cal.Rptr.2d 537, 853 P.2d 992].)

■ In the present case, the prosecutor stated race-neutral reasons for excusing the Black prospective jurors. These reasons are supported by the prospective jurors' testimony on voir dire. As disclosed by the record, the trial court did not accept the prosecutor's explanations at face value, but came to such acceptance after making a sincere and reasoned effort to evaluate the prosecutor's good faith.

Nevertheless, defendant claims we must reverse his conviction because the prosecutor's explanation for excusing the prospective jurors in question

"is plainly false." He argues that "[a]t least five of the jurors [who] served had family members who were drug users and/or had suffered a criminal conviction." This argument fails because "an appellate court will not reassess good faith by conducting its own comparative juror analysis. Such an approach would undermine the trial court's credibility determinations and would discount ' "the variety of [subjective] factors and considerations," ' including 'prospective jurors' body language or manner of answering questions,' which legitimately inform a trial lawyer's decision to exercise peremptory challenges." (*People* v. *Montiel, supra,* 5 Cal.4th 877, 909.)

As the California Supreme Court has explained, use of a comparative analysis to evaluate the bona fides of a prosecutor's stated reasons for peremptory challenges does not take into account the many considerations which go into an attorney's decision to select certain jurors while challenging others who appear to be similar. "Trial lawyers recognize that it is a combination of factors rather than any single one which often leads to the exercise of a peremptory challenge. In addition, the particular combination or mix of jurors which a lawyer seeks may, and often does, change as certain jurors are removed or seated in the jury box. It may be acceptable, for example, to have one juror with a particular point of view but unacceptable to have more than one with that view. . . . [¶] It is also common knowledge among trial lawyers that the same factors used in evaluating a juror may be given different weight depending on the number of peremptory challenges the lawyer has at the time of the exercise of the particular challenge and the number of challenges remaining with the other side. Near the end of the voir dire process a lawyer will naturally be more cautious about 'spending' his increasingly precious peremptory challenges. Thus at the beginning of voir dire the lawyer may exercise his challenges freely against a person who has had a minor adverse police contact and later be more hesitant with his challenges on that ground for fear that if he exhausts them too soon, he may be forced to go to trial with a juror who exhibits an even stronger bias. Moreover, as the number of challenges decreases, a lawyer necessarily evaluates whether the prospective jurors remaining in the courtroom appear to be better or worse than those who are seated. If they appear better, he may elect to excuse a previously passed juror hoping to draw an even better juror from the remaining panel. [¶] It should be apparent, therefore, that the very dynamics of the jury selection process make it difficult, if not impossible, on a cold record to evaluate or compare the peremptory challenge of one juror with the retention of another juror which on paper appears to be substantially similar." (*People* v. *Johnson* (1989) 47 Cal.3d 1194, 1220-1221 [255 Cal.Rptr. 569, 767 P.2d 1047].)

Defendant acknowledges the California Supreme Court's holding but argues that he is entitled to a comparative juror analysis despite this precedent. Asserting he has a federal constitutional right to a trial by a jury drawn

from a representative cross-section of the community (*Batson* v. *Kentucky* (1986) 476 U.S. 79 [90 L.Ed.2d 69, 106 S.Ct. 1712] (hereafter *Batson*)), defendant contends that, under federal constitutional jurisprudence which is binding on the states, an appellate court must perform a comparative juror analysis, and must overturn the trial court's determination that a prosecutor acted in good faith in excusing Blacks from the jury panel, if the appellate court concludes the prosecutor's race-neutral reasons for those peremptory challenges were pretextual because the prosecutor did not strike non-Black prospective jurors with similar characteristics. (*Devose* v. *Norris* (8th Cir. 1995) 53 F.3d 201, 204-205; *Walton* v. *Caspari* (8th Cir. 1990) 916 F.2d 1352, 1362; *U.S.* v. *Chinchilla* (9th Cir. 1989) 874 F.2d 695, 698-699.) Defendant's contention is unavailing for three reasons.

First, the California Supreme Court has ruled that an appellate court is not to conduct its own comparative juror analysis regardless of whether the defendant's claim is based on *Wheeler* and the California Constitution or *Batson* and the United States Constitution (*People* v. *Montiel, supra,* 5 Cal.4th 877, 909; *People* v. *Johnson, supra,* 47 Cal.3d at pp. 1221-1222), and the United States Supreme Court has not held otherwise. (*Burks* v. *Borg* (9th Cir. 1994) 27 F.3d 1424, 1427 ["The U.S. Supreme Court has not yet ruled on the role of comparative analysis on appellate review . . . ."].) Under these circumstances, we are bound by stare decisis to follow the California Supreme Court's directive. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

Second, it is not universally accepted by all of the federal circuit courts that a reviewing court must perform a comparative analysis and reject as pretextual a prosecutor's reasons for excusing a prospective juror where persons of another race were not challenged even though they had characteristics similar to the person excused. (See, e.g., *U.S.* v. *McMillon* (4th Cir. 1994) 14 F.3d 948, 953-954, fn. 5.) Moreover, *Burks* v. *Borg, supra,* 27 F.3d 1424 points out that *U.S.* v. *Chinchilla, supra,* 874 F.2d 695, one of the cases upon which defendant relies, "does not stand for the proposition that *Batson* is violated whenever prospective jurors of different races provide similar responses and one is excused while the other is not." (*Burks* v. *Borg, supra,* at p. 1429.) "Nothing in *Chinchilla* precludes trial counsel from making credibility determinations. In so doing, counsel is entitled to take account of the characteristics of the other prospective jurors against whom peremptories might be exercised; to reevaluate the mix of jurors and the weight he gives to various characteristics as he begins to exhaust his peremptories; and to take into account tone, demeanor, facial expression, emphasis—all those factors that make the words uttered by the prospective juror convincing or not. In short, counsel is entitled to exercise his full professional judgment in

pursuing his client's 'legitimate interest in using [peremptory] challenges . . . to secure a fair and impartial jury.' " (*Ibid.*)

Aside from the fact we are bound by California Supreme Court precedent on the issue of comparative analysis in reviewing attacks on the exercise of peremptory challenges, we are not required to follow federal lower court precedents which are unpersuasive. (*People* v. *Crittenden, supra,* 9 Cal.4th 83, 120, fn. 3; *Graham* v. *Scissor-Tail, Inc.* (1981) 28 Cal.3d 807, 830 [171 Cal.Rptr. 604, 623 P.2d 165].) We are not persuaded by the analysis in those federal circuit court opinions which suggest that an appellate court must undertake a comparative analysis in reviewing a trial court's resolution of a *Batson* or *Wheeler* attack on a prosecutor's use of peremptory challenges. Those decisions fail to recognize the practical considerations, articulated so well in *People* v. *Johnson, supra,* 47 Cal.3d at pages 1220-1221 and *Burks* v. *Borg, supra,* 27 F.3d at page 1429, which make a comparative juror analysis unworkable on review.

Third, when the defendant has made out a prima facie case of racial discrimination in the exercise of peremptory challenges, the prosecutor needs only to establish a facially valid race-neutral explanation why particular members of the jury panel were excused. (*Purkett* v. *Elem, supra,* ___ U.S. at p. ___ [131 L.Ed.2d at p. 840]; *Hernandez* v. *New York* (1991) 500 U.S. 352, 359-360 [114 L.Ed.2d 395, 406, 111 S.Ct. 1859].) It is the defendant's burden to establish that the prosecutor's stated reasons for excusing a prospective juror are pretextual and that the prosecutor acted with a discriminatory intent. (*Purkett* v. *Elem, supra,* ___ U.S. at p. ___ [131 L.Ed.2d at p. 839].) "[T]he ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." (*Purkett* v. *Elem, supra,* at p. ___ [131 L.Ed.2d at p. 839].) As such, it was defendant's burden in the trial court to bring forth evidence of inconsistencies in the prosecutor's exercise of peremptory challenges if this is the basis of a claim that the prosecutor's reasons for excusing certain prospective jurors were pretextual. (*U.S.* v. *McMillon, supra,* 14 F.3d at p. 953 and fn. 5.) Defendant failed to do so in his *Wheeler* motions. Not having been alerted to any need for an explanation of why he accepted the five jurors which defendant now contends have similar characteristics to the Black prospective jurors who were excused, the prosecutor was deprived of the opportunity to create a record on this point. Without such an explanation, any attempt at comparative juror analysis is questionable.

In any event, as we will show, even if we were to undertake such an ill-advised comparative analysis, the record supports the trial court's rejection of defendant's *Wheeler* motion.

 The trial court's decision on the ultimate question of discriminatory intent in exercising a peremptory challenge represents a finding of fact which must be accorded great deference on appeal. (*Hernandez* v. *New York, supra,* 500 U.S. at pp. 363-364 [114 L.Ed.2d at pp. 408-409].) We may not disturb the finding unless we are convinced that the determination is clearly erroneous. (*Id.,* at p. 369 [114 L.Ed.2d at p. 412].) Where there are two permissible views of the evidence, the trial court's choice between them cannot be clearly erroneous. (*Ibid.*)

 Defendant claims the prosecutor's reasons for excusing Rover, Godbold, Chism and Ware were pretextual because the prosecutor failed to excuse Jurors Perry, Simms, Vega, Panko and Koen, who, according to defendant, had characteristics similar to the Blacks who were excused. However, at the time the trial court ruled on defendant's first *Wheeler* motion, Vega, Panko and Koen had not been called to the jury box, nor had Ware. Accordingly, in assessing whether the trial court erred in denying the first *Wheeler* motion, the similarity, if any, of the characteristics of Vega, Panko and Koen to the excused prospective jurors is irrelevant.

The prosecutor excused Rover and Godbold because they had close relatives who were problem drug users. Chism was excused due to his cavalier use of firearms; in exercising this challenge, the prosecutor opined that a juror who is willing to discharge a firearm in the manner described by Chism would be more apt to believe the defense in this case, i.e., the victim was killed when defendant's gun discharged accidentally. Juror Perry did not share these characteristics; she did not evince a willingness to mishandle guns, or otherwise break the law, and did not have relatives who used drugs. Simms, on the other hand, had a brother-in-law who used crack cocaine and mugged a woman, but she stated expressly that she was not "chummy" with her brother-in-law. Simms also disclosed that she had two relatives who were correctional officers and one who was a military police officer. Hence, the trial court reasonably could infer that the prosecutor concluded Simms's relationship with her brother-in-law was attenuated sufficiently that it would not create a problem for the prosecution in this case, and that the occupations of her other relatives indicated Simms was inclined to have a favorable attitude towards law enforcement in general, and toward the prosecution in particular. Nothing in the record indicates the excused jurors shared these characteristics. Under the circumstances, the prosecutor's decision not to excuse Simms or Perry does not establish that his reasons for excusing Rover, Godbold or Chism were clearly pretextual and that he exercised peremptory challenges against them for discriminatory reasons. (*Hollingsworth* v. *Burton* (11th Cir. 1994) 30 F.3d 109, 112-113.)

At the time of defendant's second *Wheeler* motion, Ware had been excused and Vega had been called into the jury box. The prosecutor justified

excusing Ware because her uncle had been convicted of murder, the exact offense for which defendant was on trial. He was concerned "there could be some biases here that would cause Ware not to be an impartial juror," noting the way she was sitting and frowning, and her lack of interest in the proceedings. Nothing in the record discloses that Vega, Perry, or Simms presented similar demeanors or that they had relatives convicted of murder. Vega did have cousins who had used crank and committed a drive-by shooting, but she noted they were not solid members in good standing with the family. The trial court reasonably could infer the prosecutor believed Vega's drug-using relatives were not a problem due to her lack of closeness to them, or he decided to keep Vega as a juror because she disclosed that another of her relatives had been a murder victim, which the prosecutor may have perceived as making her inclined be a juror who would look favorably upon the prosecution's case because of sympathy for the deceased. Under the circumstances, the trial court did not err in denying the second *Wheeler* motion as defendant did not meet his burden of showing that the prosecutor's reasons were pretextual and that race was the real basis for the peremptory challenges. (*U.S.* v. *McMillon*, *supra*, 14 F.3d at p. 953.)

After defendant's second *Wheeler* motion, Panko and Koen were added to the jury. Panko's daughter is a registered drug offender, and Koen's brother has been in an out-patient, drug-rehabilitation program. However, defendant did not renew his *Wheeler* motion and assert the prosecutor's failure to excuse these jurors demonstrated that his stated reasons for excusing Rover and Godbold were pretextual. Hence, defendant has waived any claim of error premised upon the prosecutor's failure to excuse Koen and Panko.

Even considering the similarities among Koen, Panko and the Black jurors who were excused, the totality of the circumstances demonstrates the trial court's determination that the prosecutor was not acting with discriminatory intent is not clearly erroneous. The record discloses that Koen is Black. This tends to indicate the prosecution was not using the fact of prospective jurors' drug-using relatives as a ruse to excuse Blacks from the jury panel, otherwise he would have used the opportunity to challenge Koen. (Cf. *Doss* v. *Frontenac* (8th Cir. 1994) 14 F.3d 1313, 1317.) In addition, the prosecutor excused prospective jurors Riddleberger, Nevarez, and Settje, all of whom are not Black but whose relatives used drugs, and also excused prospective juror Wollam, another non-Black, whose uncle committed manslaughter. This supports a determination that the prosecutor's stated reasons for excusing Rover, Godbold, Chism, and Ware were not pretextual as the prosecutor excused people of other races with similar characteristics. (*Hollingsworth* v. *Burton*, *supra*, 30 F.3d at pp. 112-113.) Furthermore, the final jury panel, which the prosecutor accepted while he still had two peremptory challenges

available, included two Blacks. This supports a finding that the prosecutor did not act with discriminatory intent in excusing the other four Black members. (*Burks* v. *Borg*, *supra*, 27 F.3d. at p. 1429; *U.S.* v. *Canoy* (7th Cir. 1994) 38 F.3d 893, 900.)

During oral argument, defendant's appellate counsel asserted that, although we should undertake a comparative analysis of the prospective jurors who were excused and those who were selected for the jury, it is inappropriate for us, in undertaking this analysis, to consider the comparative fact that two of the jurors accepted by the prosecutor are Black. He is wrong. "[That] the prosecutor did accept minorities on the jury [is] a valid, though not necessarily dispositive, consideration in determining whether a prosecutor violated *Batson*" in excusing other minorities from the jury. (*Burks* v. *Borg*, *supra*, 27 F.3d. at p. 1429.) Hence, it is appropriate to "rel[y] on the fact that the government waived available strikes and permitted members of a racial minority to be seated on a jury to support a finding that the government did not act with discriminatory intent in striking another member of the same minority group." (*U.S.* v. *Canoy*, *supra*, 38 F.3d at p. 900, and cases cited therein.)

■ Next, defendant suggests the prosecutor excused prospective jurors because he believed they would not have sympathy for the victim under the facts of this case. In defendant's view, it was improper for the prosecutor to have relied upon this reason because "[i]t has long been the law that jurors are not to allow such feelings such as pity or sympathy affect their deliberations and verdict" and jurors are so instructed.

Defendant misconstrues the prosecutor's motive, which was to exclude from the jury those people who might believe that, as a drug user, the victim was violent and less entitled to protection of the law, and thus might feel his murder need not be punished. In other words, the prosecutor sought to exclude those with a bias against the prosecution of defendants who have acted to rid the world of miscreants like the victim. That jurors are instructed not to allow their verdict to be influenced by sympathy does not mean an attorney is precluded from attempting to exclude from the jury those who are likely to be unsympathetic to the attorney's case. "One of the most regular uses of peremptory strikes is to eliminate from the final jury venirepersons whom either side believes will be too sympathetic to his opponent." (*U.S.* v. *McMillon*, *supra*, 14 F.3d at p. 953.)

Defendant also cites *J.E.B.* v. *Alabama* ex rel. *T.B.* (1994) __ U.S. __ [128 L.Ed.2d 89, 114 S.Ct. 1419] for the proposition that it is impermissible to excuse prospective jurors based on gender or race because of a stereotype

that their "group" is more "sympathetic" and receptive to certain positions. It suffices to say that Rover, Godbold, Chism, and Ware were excused because of *individual factors* which the prosecutor believed would render them *too* sympathetic toward the defense, and not because he believed that Blacks in general are defense oriented. Hence, the cited case is inapposite.

In another attack on the use of peremptory challenges, defendant contends the prosecutor improperly excused prospective juror Nevarez, a Hispanic woman. Defendant has waived the claim, however, by failing to make a timely objection and establish a prima facie case of racial discrimination after Nevarez was excused.

For the first time on appeal, defendant asserts in a footnote in his reply brief that he was deprived of effective assistance of counsel by his trial attorney's failure to make a *Wheeler* motion after Nevarez was excused. The contention is untimely. (*People* v. *Adams* (1990) 216 Cal.App.3d 1431, 1441, fn. 2 [265 Cal.Rptr. 568].) In any event, defendant has not demonstrated ineffective assistance of counsel. Nevarez's voir dire testimony (her "lowlife" brother uses drugs daily; she knows others who use methamphetamine, one of whom was arrested; and people who take amphetamine behave "differently") supports a race-neutral peremptory challenge in this case where the victim had consumed methamphetamine shortly before confronting Johnson and getting shot by defendant. Consequently, defendant's trial counsel was not deficient for failing to make a *Wheeler* objection based on the challenge to Nevarez. (Cf. *People* v. *Constancio* (1974) 42 Cal.App.3d 533, 546 [116 Cal.Rptr. 910].)

After making a sincere and reasoned effort to evaluate the good faith of the prosecutor's race-neutral reasons for excusing the prospective jurors in question, the trial court made a determination that the explanations were genuine. Because the record of voir dire indicates grounds upon which the prosecutor reasonably and legitimately might challenge these prospective jurors, the trial court did not err in denying defendant's *Wheeler* motions. (*People* v. *Crittenden, supra*, 9 Cal.4th at p. 117.)

## II, III*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is affirmed.

Morrison, J., concurred.

---

*See footnote, *ante*, page 1039.

**BLEASE, Acting P. J.,** Concurring.—I concur in the judgment and in parts II and III of the opinion. As to part I, I concur in the result on the view that it is compelled by the California Supreme Court's decision in *People* v. *Montiel* (1993) 5 Cal.4th 877 [21 Cal.Rptr.2d 705, 855 P.2d 1277] and is supported by the recent decision of the United States Supreme Court in *Purkett* v. *Elem* (1995) __ U.S. __ [131 L.Ed.2d 834, 115 S.Ct. 1769].

The defendant challenges the striking of Black jurors on the ground the reasons offered by the prosecutor for their exclusion were pretextual in that the same reasons could have been applied to strike other jurors who were not challenged. The use of such comparative data is ruled out by *People* v. *Montiel, supra,* That rule has not been overturned by *Purkett* v. *Elem, supra,*

But if comparative data may not be used to show that the reasons offered for striking Black jurors are pretextual, such data also may not be used to show they were not pretextual, as the majority suggests. What may be shown at this (third) stage of review is the "persuasiveness of the justification." (*Purkett* v. *Elem, supra,* __ U.S. at p. __ [131 L.Ed.2d at p. 839].) As the United States Supreme Court has noted, "implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination." (*Ibid.*) The reasons for striking Black jurors shown on the record in this case pass that test.

Appellant's petition for review by the Supreme Court was denied March 13, 1996. Mosk, J., was of the opinion that the petition should be granted.