Filed 1/26/21  P. v. Castro CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>LEONARDO CASTRO,<br><br>      Defendant and Appellant. | D077034<br><br><br>(Super. Ct. No. JCF001942) |

APPEAL from a judgment of the Superior Court of Imperial County, Monica Lepe-Negrete, Judge.  Affirmed.

Arielle N. Bases, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steve Oetting and Heather B. Arambarri, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Leonardo Castro with committing a forcible lewd act upon a child under 14 years old.  (Pen. Code,[1] § 288, subd. (b)(1).)  The court sentenced Castro to the low term of five years in prison and imposed various fines and fees.  The court also ordered Castro to register as a sex offender pursuant to section 290 and to pay a restitution fine and court assessments. (§ 290.)

Castro appeals, contending his trial counsel was ineffective for not objecting to the admission of statements Castro made to law enforcement, depriving him of his Sixth Amendment right to effective assistance of counsel.

We determine that claim lacks merit.  Accordingly, we affirm Castro's conviction.

I

FACTUAL AND PROCEDURAL BACKGROUND

A.  Prosecution Evidence

On the evening of January 17, 2019, Leonardo Castro went to a restaurant with his parents, a family friend, and the friend's two daughters. The daughters, eight-year-old N.I. and N.I.'s four-year-old sister, were students at a karate studio where Castro worked as an instructor's assistant. Castro was 23 years old.

Castro and the girls went into the indoor play area within the restaurant.  The three of them began playing the "train game" in which two people lie face down on the floor and one person climbs over the other two. N.I. was lying on her stomach playing this game when Castro climbed on top of her and pressed his hands down on top of hers with enough force that N.I.

---

[1]    Further statutory references are to the Penal code, unless otherwise specified.

2

was unable to move. Castro then placed his penis area on N.I.'s buttocks area and began making back-and-forth movements with his hips.

N.I. was uncomfortable and told Castro to get off, but he did not get up. Instead, Castro told N.I. to get into a "doggy position" by placing both her hands and knees on the ground. N.I. got into a doggy position, and Castro put his hands on top of N.I.'s hands and began moving his groin area back and forth against N.I.'s buttocks. Castro made these movements about 10 to 15 times before stopping. While Castro was making these movements, N.I. could feel that his penis was hard. Castro asked N.I. if what he was doing felt "good" or "nice."

After N.I. got out of this doggy position, Castro told N.I. to lay down on her back. N.I. refused and decided to leave the playground area with her sister to go use the restroom. Castro told N.I. not to tell her parents what had happened in the play area.

Later that night, N.I. told her mother what Castro had done. N.I.'s parents took her to the police station to report the allegations. N.I told an investigating officer what Castro had done to her and then recounted the events during a forensic interview with a social worker.

A detective contacted Castro and asked him to come to the Calexico police station for voluntary questioning. During his interview on January 23, 2019, Castro was read his *Miranda*[2] rights, and after acknowledging that he understood his rights, he agreed to speak with the officer and detective about N.I.'s allegations. At trial, the People played an audio recording of the statements Castro made during his interrogation.

---

[2] *Miranda v. Arizona* (1966) 384 U.S. 436.

## B. Defense Evidence

When Castro voluntarily went to the Calexico police station for an interview with an officer on January 23, 2019, his mother accompanied him. Upon their arrival, the detective advised Castro and his mother that Castro was now being detained for questioning based on information that the detective had learned shortly before Castro's arrival, and that the interview was no longer voluntary. After the detective told Castro's mother that they needed to speak with him alone, she told Castro she was going to call an attorney and instructed him not to say anything to the officer or the detective before she left the room.

The detective explained to Castro that the officer would read him his rights and then tell him what had been alleged by N.I. and her parents. The detective told Castro he could choose to exercise his rights, or he could waive them and explain to the detective and the officer what happened with N.I. The officer then read Castro his *Miranda* rights and received multiple affirmative confirmations from Castro that he understood each right after it had been read.

After briefly explaining the allegations against Castro, the detective again advised Castro that he could choose to continue or stop the interview. Castro was willing to tell his side of the story and confirmed, once again, that he understood his rights. Castro stated that he was playing the "game" with N.I. when he fell on her and his "private fell on her butt" accidentally. He denied moving his penis against N.I.'s buttocks at any time but admitted that he told N.I. not to tell her parents about the train game.

The detective told Castro that N.I. could feel that Castro was aroused when his penis was on her buttocks. Castro said that he understood what "aroused" meant, but his statements to the officer and the detective

4

demonstrated that he had some confusion around the exact meaning of the word "aroused." The detective then explained that in this context, aroused meant that "part of [Castro's] penis [was] hard." On this point, Castro explained that he was "accidentally aroused" while playing the train game. He stated he became accidentally aroused because he was remembering a time when he was with friends who were drinking, and he got a "little bit aroused" thinking about something that happened on that occasion.

The officer told Castro that N.I. had reported that, when Castro was rubbing his penis on her buttocks, he said, "How does it feel? Good and nice?" Castro denied saying these words to N.I. and instead claimed that when he accidentally fell on her, he asked N.I., "Did you feel it?" Castro clarified that "it" was in reference to his penis. Castro repeatedly denied asking N.I. if his actions felt "nice and good," and he further denied putting pressure on N.I.'s hands and forcing her to stay down. When asked whether he had played "doggie" with N.I., Castro stated that he did not recall playing that game and denied holding N.I. down or thrusting his penis against her.

Defense counsel did not move to suppress the statements prior to trial.

At trial, Castro testified on his own behalf and admitted that he had played the "train game" with N.I. He further admitted that he had a "semi-erection" while playing the game and that he instructed N.I. and her sister not to tell their parents about the game. Castro denied that he was aroused by N.I., that he put his hands on N.I.'s hands, or that he put his penis on N.I.'s buttocks. He had also denied to police that he asked N.I. to get into a "doggy position" or whether his actions felt "good" or "nice" to her.

Castro testified that he fell onto N.I. after getting his foot stuck in his karate pants and losing his balance. Castro stated that he then apologized to

5

N.I.  He further claimed he had asked N.I. if she had been hurt by his fall, and N.I. told him she had not been hurt.

During the trial, the prosecutor referenced Castro's statements about his admission to having an erection while playing with N.I.  She played the audiotape of Castro's interrogation; she asked the investigating officer about Castro's statements during his direct examination, and she asked Castro himself about the statements during cross-examination.  In her closing argument, the prosecutor referenced Castro's arousal several times, suggesting that Castro's explanation about his erection was not believable.

On cross-examination, the prosecutor asked Castro about his statements to law enforcement that he became sexually aroused while playing with N.I.  Castro admitted that he had become aroused and characterized his arousal as a "semi-erection."  Castro testified that he had told the officer and the detective that he had been sexually aroused when he accidentally fell onto N.I.'s buttocks while playing a game with N.I.

Defense counsel did not object when the prosecutor played the audiotape of Castro's interrogation.  Similarly, defense counsel did not object to either the prosecutor's questions to witnesses about Castro's statements to law enforcement or to the prosecutor's comments during closing arguments regarding Castro's statements to law enforcement.

## II

## DISCUSSION

Castro contends that his trial counsel was ineffective specifically for: (1) failing to make a motion to suppress the statements he made to law enforcement, (2) not objecting to the jury hearing an audio recording of the interrogation, and (3) not objecting to the prosecutor's use of the statements

in her closing argument.  We are not persuaded that Castro's claim of ineffective assistance of counsel has merit.

To prevail on a claim of ineffective assistance of counsel, Castro must show (1) his counsel's performance fell below the objective standard of reasonableness; and (2) he was prejudiced as a result.  (*People v. Weaver* (2001) 26 Cal.4th 876, 961; *Strickland v. Washington* (1984) 466 U.S. 668, 688 (*Strickland*).)  Competency is presumed unless the record affirmatively excludes a rational basis for trial counsel's choice.  (*People v. Musselwhite* (1998) 17 Cal.4th 1216, 1260 (*Musselwhite*); *People v. Ray* (1996) 13 Cal.4th 313, 349 (*Ray*).)  An appellate court generally cannot fairly evaluate counsel's performance at trial based on a silent record.  (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267.)

On appeal, we are left with the record to reveal why counsel did not move to suppress or object to the prosecution's use of Castro's statements to law enforcement.  The burden is on Castro to "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " (*Strickland, supra*, 466 U.S. at p. 689.)  Because the record does not explain why counsel chose not to object or suppress, Castro's claim must be rejected unless the record positively excludes a rational basis for trial counsel's choice.  (*Ray, supra*, 13 Cal.4th at p. 349; *Musselwhite, supra*, 17 Cal.4th at p. 1260.)

Castro contends that trial counsel was ineffective for failing to suppress his statements made to law enforcement and for not objecting to the prosecution's references to those statements throughout trial.  Castro bases his argument on the grounds that those statements were inadmissible because they were coerced, and he did not knowingly or voluntarily waive his *Miranda* rights.

7

However, Castro's assertion that his statements to law enforcement were coerced fails, as there is no evidence in this case that shows the statements he made in his interview were coerced or otherwise not voluntary. Castro was a 23 year old adult at the time of his interview. He had been advised by his mother to exercise his rights and to not speak to law enforcement. Castro only made those statements after he was read his *Miranda* rights, after he acknowledged that he understood his rights, and after he agreed to speak with the officer and detective about N.I.'s allegations. The detective and officer asked Castro multiple times if he was okay with answering their questions, emphasizing that Castro controlled the conversation. The statements were not coerced because Castro was an adult fully apprised of his rights, rights which even his mother recommended he exercise, when he voluntarily made those statements to law enforcement.

The fact that Castro learned that he was being detained for questioning only after arriving at the police station, for what he was initially told was a voluntary interview, does not render his statements involuntary because Castro could have refused to provide any statement at all. These circumstances did not clearly override his will nor critically impair his capacity for self-determination such that use of his statements would offend due process. (*Berghuis v. Thompkins* (2010) 560 U.S. 370, 387 [Fifth Amendment privilege is not concerned with moral and psychological pressures to confess emanating from sources other than official coercion]; *Arizona v. Fulminante* (1991) 499 U.S. 279, 303 (*Fulminante*).) Additionally, Castro's confusion as to what "aroused" meant does not negate his knowing and voluntary waiver of his *Miranda* rights. Because Castro's statements were admissible and not the result of coercive interrogation tactics, trial

8

counsel's failure to suppress the statements does not amount to ineffective assistance of counsel.

Moreover, there could be any number of reasonable explanations as to why defense counsel chose not to object to the introduction of Castro's statements at trial. It is possible trial counsel believed that by admitting the entirety of the interview between Castro and law enforcement, trial counsel could demonstrate to the jury Castro's confusion surrounding the word "arousal," and thus undermine the validity of material admissions he made to law enforcement. Or trial counsel may not have objected or moved to suppress because he felt the full interview challenged the officer's and the detective's credibility as witnesses. The fact that Castro testified on his own behalf at trial supports the notion that, instead of making a futile motion to suppress or objecting to the admission of Castro's statements, counsel had Castro testify and explain those statements as part of the defense's trial strategy.

Because there is no evidence in the record that Castro's statements to law enforcement were coerced or involuntary, Castro has failed to demonstrate that his counsel's representation fell below the standard of a competent advocate. Thus, the record does not support Castro's contention that his trial counsel performed deficiently in failing to suppress or object to the evidence of his statements.

We need not address the second prong Castro must meet in order to prevail on his ineffective assistance of counsel claim because Castro is unable to prove that trial counsel's representation fell below the minimum standard of a competent advocate. Regardless, we find that Castro fails to prove he was prejudiced as a result of his trial counsel's failure to object to or suppress the admission of his statements.

9

For an ineffective assistance of counsel claim to be successful on appeal, Castro must not only prove his trial counsel's representation fell below the objective standard of reasonableness, but he must also affirmatively prove " ' "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." ' " (*People v. Hart* (1999) 20 Cal.4th 546, 624.)  Castro fails to meet this standard.

As we previously noted, the statements Castro made to law enforcement were knowing, voluntary, and the result of his own free will, and therefore legally admissible.  (*Fulminante*, *supra*, 499 U.S. at p. 303 [confession does not violate due process when it is the product of an essentially free and unconstrained choice by its maker, such that his will has not been overborne nor his capacity for self-determination critically impaired].)  Because the interview was ultimately admissible, it is not probable the outcome of the trial would have been any different absent the objections.  (See *People v. Rodriguez* (2014) 58 Cal.4th 587, 637 [rejecting defendant's claim that trial counsel was ineffective for not objecting to admission of statements defendant made in her deposition because "an objection on hearsay grounds would have been specious"]; see also *People v. Anderson* (2001) 25 Cal.4th 543, 587 [counsel is not required to proffer futile objections]; see also *People v. Constancio* (1974) 42 Cal.App.3d 533, 546 ["It is not incumbent upon trial counsel to . . . undertake useless procedural challenges merely to create a record impregnable to assault for claimed inadequacy of counsel."].)

Thus, Castro cannot establish either of the elements required in order to prevail on an ineffective assistance of counsel claim.

DISPOSITION

Judgement is affirmed.


HUFFMAN, Acting P. J.

WE CONCUR:



IRION, J.



DATO, J.


11